[Civ. No. 51795. Second Dist., Div. Two. July 26, 1978.]

JOHN A. ALTSCHUL, Plaintiff and Appellant, v.
HILL SAYBLE, Defendant and Respondent.

156

**COUNSEL**

Joseph M. Fredrics for Plaintiff and Appellant.

Slavitt, King, Weiser & Perlberger and Marshall S. Zolla for Defendant and Respondent.

**OPINION**

**BEACH, J.**—Attorney John A. Altschul appeals from the summary judgment granted in an action brought by Altschul against Attorney Hill Sayble wherein appellant sought to recover money allegedly owed by respondent pursuant to said attorneys' fee-splitting/referral fee agreement. The trial court held that the contract was against public policy and unenforceable.

FACTS:

On March 24, 1971, appellant informed respondent that one of appellant's divorce clients, Robert E. Smith, had been injured in a

motorcycle accident. Appellant asked respondent to represent Smith in connection with his personal injury claim arising from the accident. Respondent agreed, and he also agreed, in return for the work already done by appellant in gathering facts and preserving the case, to pay one-third of any fees recovered to the appellant's law firm plus an additional 10 percent of such fees to appellant individually. On the same date, respondent obtained Smith's signature on a retainer agreement, to which appellant's name was later added.

The complaint on behalf of Smith was filed on April 6, 1971. An association of attorneys dated April 7, 1971, was executed by respondent with appellant's law firm in the personal injury action. In addition, a contract, dated April 12, 1971, was entered into by both parties wherein appellant was to receive personally 10 percent of the attorneys' fees recovered in addition to a 33⅓ percent referral fee payable to appellant's law partner.

Robert E. Smith died as a result of his injuries on May 27, 1971. Thereafter, respondent represented the widow, Autie Mae Smith, and her children in a wrongful death action. On May 28, 1971, appellant prepared and respondent executed a reaffirmation of the previous referral fee contract. Respondent filed a supplemental complaint on December 8, 1971, presenting the wrongful death action; and the personal injury action became one for diminution of the decedent's estate. The case was settled for $456,756.98; respondent received attorney's fees of $167,702.79. Appellant requested his 10 percent of the fee. Respondent refused to pay; appellant sued for breach of contract. Respondent's initial motion for summary judgment was denied. But subsequently the court granted respondent's motion for reconsideration and granted summary judgment in his favor. It held the fee-splitting contract to be an "unearned forwarding fee," and unenforceable as contrary to public policy. This appeal followed.

CONTENTIONS ON APPEAL:

1. The fee-splitting contracts sued upon are legal and enforceable. They were not contrary to the law or policy of California nor to the State Bar Rules of Professional Conduct when the contracts were executed.

2. There was valid consideration for the agreements given to respondent by appellant.

3. An attorney who associates with another on a particular case is liable for any malpractice and is thereby entitled to a share of the fee.

4. The services rendered by appellant for the decedent and his widow were reasonably worth 10 percent of the contingency fee recovered by respondent.

DISCUSSION:

1. *The fee-splitting contracts are unearned forwarding fee agreements and are unenforceable as contrary to public policy.*

The issue presented in the instant case is evidently one of first impression.

■ It is settled that summary judgment is appropriate only where there are no issues of fact to be tried before a judgment can be pronounced. (*Simmons* v. *Civil Service Empl. Ins. Co.,* 57 Cal.2d 381, 384 [19 Cal.Rptr. 662, 369 P.2d 262].) If there is not a genuine factual controversy, summary judgment can resolve the dispute without a full-scale trial, the avoidance of which is a matter of judicial economy and sound social policy. (*Blair* v. *Pitchess,* 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].)

The Rules of Professional Conduct of the State Bar (hereinafter, Rules) were first adopted in 1928. On January 1, 1975, new Rules became effective.[1] The original Rules by express reference endorsed the Canons of Professional Ethics of the American Bar Association (hereinafter, Canons).[2] However, only violation of the State Bar Rules was subject to disciplinary action. Rule 1 stated in pertinent part that: "The specification in these rules of certain conduct as unprofessional is not to be interpreted as an approval of conduct not specifically mentioned. In that connection the [Canons] should be noted by the members of the State Bar."

---

[1] These Rules are published in West Annotated California Codes, volume 3B, Business and Professions Code following section 6076, at pages 364-407; Deering's California Codes Annotated, Rules (1976 ed.) at pages 581-633.

[2] The ABA Code of Professional Responsibility (hereinafter Code) replaced the Canons as of January 1, 1970.

Both ABA Canons 34 and 38 condemned forwarding or referral fees.[3] Furthermore, the Canons were adopted by the Los Angeles County Bar Association as its Canons of Ethics in 1917.

■ Appellant concedes that fee-splitting arrangements between attorneys, involving no services rendered or responsibility assumed by the referring attorney but only a bare referral, have long been condemned and disapproved by the formal opinions construing the ethical standards of the profession.[4] When the present ABA Code was adopted in 1970, it included the following prohibition of forwarding fees:

*"DR 2-107 Division of Fees Among Lawyers*

"(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

"(1) The client consents to employment of the other lawyer after a full disclosure that the division of fees will be made.

"(2) The division is made in proportion to the services performed and responsibility assumed by each.

"(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client."

Subsequently, State Bar Rule 1 was amended to read in part: "In that connection the [Code] should be *noted* by the members of the State Bar." (Italics added.)

■ This reaffirmed that the State Bar's incorporation by reference of the ethical criteria of the ABA Code could reasonably be construed as the equivalent of expressing public policy on legal ethics, notwithstanding the fact that only violation of State Bar Rules was subject to disciplinary action.

---

[3]Canon 34: "No division of fees for legal services is proper except with another lawyer, based upon a division of service or responsibility."

Canon 38: "A lawyer should accept no compensation, commissions, rebates, or other advantages from others without the knowledge and consent of his client after full disclosure."

[4]Respondent quotes ABA Formal Opinions 153 (1936), 204 (1940), 848 (1965), 932 and 936 (1966), and LA County Bar Association Ethics Opinions 204 (1953) and 232 (1956) in support of the proposition that, absent a division of service or responsibility, a division of fees simply on a referral basis violates professional ethics.

Such a construction of Rule 1 is supported by the subsequent adoption of Rule 22 in 1972, which closely follows ABA Code DR 2-107 in prohibiting referral fee-splitting.[5] By adopting Rule 22 California acknowledged the universal condemnation of fee-splitting and followed the lead of the ABA, 48 other states, and the Los Angeles County Bar Association in officially proscribing referral fees and in making violation subject to disciplinary action. The same ethical and public policy considerations that had previously prompted the State Bar to "commend" and to "note" the ABA standards to members of the California Bar culminated in a formal ban of the type of forwarding fee/fee-splitting contract present in the instant case.[6] Further indication that Rule 22 was merely a formal codification of what was already existing public policy, albeit not statutorily declared, is found in the prefatory statement in Rule 1 that, "The specification in these rules of certain conduct as unprofessional is not to be interpreted as an approval of conduct not specifically mentioned."

However, appellant contends that the court below erred in granting summary judgment because, he argues, only the State Bar can declare public policy on legal ethics, and it did not officially ban referral fees until it adopted Rule 22 more than one year after the disputed contract was executed. Appellant argues that since the ABA Code was unenforceable in California unless specifically adopted by the State Bar Rules, and since violation of the ABA Code was not subject to disciplinary action, therefore, California public policy was not violated because it did not then exist on the subject of fee-splitting and the contracts are enforceable.

We reject appellant's contentions. We disapprove of and condemn not only the fee-splitting for referral contract but also the premise upon which it is based and which is advanced by appellant in attempted justification of the contract here. That premise declares that if there is no explicit written statute, rule, or canon expressly forbidding it, or imposing

[5]Former Rule 22, which was superseded on January 1, 1975, by·the present Rule 2-108, read in pertinent part:

"(a) A member of the State Bar shall not divide a fee for legal services with another attorney who is not a partner in or associate of his law firm or law office, unless:

"(1) the client consents to employment of another attorney after a disclosure that a division of fees will be made; and

"(2) the division is made in proportion to the services performed or responsibility assumed by each; and

"(3) the total fee of the attorneys does not clearly exceed reasonable compensation for all legal services they render to the client."

[6]Kohlman, *An Equitable Contingency Fee Contract* (1975) 50 State Bar J. pages 271-272.

discipline therefor, any fee agreement that a lawyer can effect is valid and enforceable without regard to considerations of good conscience, fair dealing, and irrespective of the eventual effect on the cost to the client. The public policy of preventing exorbitant or excessive fees does not tolerate such a philosophy.

In interpreting the concept of "public policy," it is instructive to consider the statement of the California Supreme Court in *Safeway Stores* v. *Retail Clerks etc. Assn.,* 41 Cal.2d 567, 574-575 [261 P.2d 721]:

"It is true that questions of public policy are primarily for the legislative department to determine. But it is also true that when neither the Constitution nor the Legislature has spoken on the subject the courts may make the declaration.

"In cases without number the state courts have declared contracts, transactions and activities of individuals, associations and corporations to be contrary to public policy where their legislative departments have not spoken on the subject."

In *Maryland C. Co.* v. *Fidelity etc. Co.,* 71 Cal.App. 492, 497 [236 P. 210], the court stated: "The question, what is public policy in a given case, is as broad as the question of what is fraud. It is primarily the prerogative of the legislature to declare what contracts and acts shall be unlawful; but courts, following the spirit and genius of the law, written and unwritten, of a state, may declare void as against public policy contracts which, though not in terms specifically forbidden by legislation, are clearly injurious to the interests of society. . . ." There is no requirement that a contract violate an express mandate of a statute before it may be declared void as contrary to public policy.

█ Applying these principles to the situation at bench, the record does not demonstrate the extent, if any, to which Robert Smith or his widow, Autie Mae Smith, was informed of the appellant's referral fee and totally fails to show that appellant acted in his client's interest and not his own in making the fee-splitting arrangement. █ The fiduciary duty of an attorney to his client requires no less than that the client is so informed and then intelligently agrees to any referral fee. Public policy dictates the same result. (*Dunne & Gaston* v. *Keltner,* 50 Cal.App.3d 560, 566 [123 Cal.Rptr. 530], conc. opn.)

Nonetheless, appellant insists that respondent was fully aware of the custom of referral fees in the area where both practiced and that he

entered into the contracts fully informed; and therefore, this court should now sanction that usage because no statute then condemned it. Appellant's exclusive reliance on *Turner* v. *Donovan,* 3 Cal.App.2d 485 [39 P.2d 858], as authority for judicial approval of fee-splitting is not persuasive. That 1935 case was an action to recover attorney fees, and plaintiff alleged therein that "it was the established and universally recognized usage and custom in the state of Texas, as in California, among attorneys, that the attorney forwarding any legal business to another attorney would be entitled to one-third of the fee . . ." (*id.,* at pp. 486-487); that both were aware of the custom; and that the business was so forwarded and accepted. The court held that the complaint contained the necessary allegations to raise the issue of such a custom among attorneys. Whatever the customs and policy of Texas in 1935, such a solitary decision cast adrift on the sea of law is not binding on this court, guided by contemporary law and public policy.

As for appellant's further contention that a contract valid when made is not affected by a subsequent change in public policy of a state (*Stephens* v. *Southern Pacific Co.,* 109 Cal. 86 [41 P. 783]), we agree that the contracts to pay the 10 percent referral fee did not violate the letter of the State Bar Rules so as to subject the parties to disciplinary action. However, it appears obvious in light of the authorities cited above and in accord with the succinct conclusion of the learned judge in the court below that, "public policy is not as narrow as the rules for professional discipline."

Not only did the subsequent adoption of Rule 22 reflect the modern trend of the law, but that also supports respondent's contention that Rule 22 was codified for the very reason that existing California policy was continuing to be violated. The Rules are not only ethical standards to guide the conduct of members of the bar; but they also serve as an expression of public policy to protect the public. (*Ames* v. *State Bar,* 8 Cal.3d 910 [106 Cal.Rptr. 489, 506 P.2d 625].) Codification would not have been necessary absent such violations. Public policy was not created out of a vacuum by codification.

Since courts have been invested with wide latitude in determining what constitutes public policy and since both appellant and respondent are *in pari delicto* as to the fee-splitting, the guidance of the court in *Maryland C. Co.* v. *Fidelity etc. Co., supra,* 71 Cal.App. 492, 495, is again apposite: "It has not seemed satisfactory to some able and just minds that courts should hold that where parties to a contract are *in pari delicto* they will leave the delinquents where they find them, because such a rule permits

one to plead his own wrong . . . and thereby obtain an unconscionable advantage . . . through being relieved of an obligation . . . . Courts, however, are not called upon to settle any questions of conscience between the parties, but are interested only in the higher duty of protecting society from the effect of contracts made in disregard of its interests. . . ."

In the instant case, the court will leave the parties, each equally culpable, where it has found them as to the attempted fee-splitting agreement and denies the relief sought by appellant.

In view of the disposition of appellant's first contention, the contention that he gave valid consideration for the contracts to respondent in the form of legal services becomes moot. A contract void as contrary to public policy cannot be treated as valid by invoking such a principle.

*2. Disposition of this case pursuant to State Bar Rule 2-108 would only entitle appellant to a share of the fee "in proportion to the services performed or the responsibility assumed."*

It is misleading for appellant to suggest that because an attorney who associates with another on a particular case is liable for any malpractice committed, which is arguably an assumption of some minimal responsibility under present Rule 2-108, that therefore he is entitled automatically to the 10 percent referral fee pursuant to the contract. The language of that Rule is too clear to warrant further discussion: Division of fees is proper only under limited circumstances and then *only* "in proportion to the services performed or the responsibility assumed." Appellant gives no indication that his services or assumed responsibility are so proportionate.

*3. A fixed percentage of respondent's contingency fee as compensation for appellant's services is excessive consideration under the scrutiny to which such disfavored contracts are subjected.*

In general it is correct that a recital in a contract that a specific consideration has been received is an admission and prima facie evidence that it was the consideration; the consideration need not necessarily be adequate to make a contract enforceable; and once the existence of good consideration has been established courts do not generally look to its sufficiency. Nevertheless, where, as here, the contract itself is disfavored because it is only a fee-splitting agreement between attorneys, the consideration will be closely examined in light of the principle that any

division of fees must be proportionate to the services rendered or responsibility assumed.

Because this appeal arises from a summary judgment, this court must accept as true the facts alleged by appellant in opposition to the motion for summary judgment. (*Desny* v. *Wilder,* 46 Cal.2d 715, 725 [299 P.2d 257].) In addition to the services set forth above, appellant declared that after executing the fee-splitting contract he stood ready and willing to render assistance to respondent in the personal injury action. He denied that there was any agreement that he would perform no services on that case; and further declared that he performed various services before and after referring the case to respondent.

There is no merit, however, to appellant's contention that such slight services as declared were worth 10 percent of the contingency fee recovered. At most, appellant interviewed Mr. Smith before his death concerning the vehicle accident, visited him several times in the hospital, hired an investigator to work on the case, and wrote a letter to another attorney competing with him to represent Mr. Smith.

Under these circumstances, appellant's share of a divided contingency fee should not exceed the actual reasonable value of the services performed. The services were of slight value compared to the disproportionately large recovery now sought. The 10 percent referral fee was not made under a contract executed before the extent of the services to be performed could be ascertained, but instead was entered into after the services had been rendered, and since appellant has foregone quantum meruit as a basis of compensation for his services, the issue of determining the actual value of his services is not before the court.

We have examined the additional cases relied upon by appellant and find them factually distinguishable and not otherwise compelling of a different decision herein.

Therefore, the trial court's resolution of this matter by granting summary judgment was proper. We have considered the rationale of the court below as expressed in its minute order; and, although not binding on this court, we adopt it as part of this opinion by reference.[7] The

[7]Judge Hupp's minute order granting summary judgment states in pertinent part:
"The Court believes that it took too narrow a view of the 'public policy' aspect of the case on the previous decision. To be sure, the amended Rules of Professional Conduct, which would otherwise subjected both plaintiff and defendant to exposure to potential discipline for the pure 'forwarding fee' here involved as to at least the wrongful death case, did not come into existence until after the contract.
"No potential discipline is therefore involved. (The reference to the ABA canons

referral fee/fee-splitting contract between the attorneys violated public policy and for that reason was unenforceable.

The judgment is affirmed.

Fleming, Acting P. J., and Compton, J., concurred.

'commended' to attorneys is not sufficiently binding to allow discipline to be based upon it. . . . An analogy may be found in non-enforcement of gambling contracts. Whether criminal responsibility can be assessed or not, such 'debts' are not enforced in the civil courts. An unearned 'forwarding fee' falls into the same class and that is clearly what is involved here.)"