[Civ. No. 52864. Second Dist., Div. Five. Dec. 11, 1978.]

**\*\*I. ALFRED BRECKLER, Plaintiff and Appellant, v. IRWIN THALER et al., Defendants and Respondents.**

\*\*Reporter's Note: This case was previously entitled "Martinez v. County of Los Angeles."

**COUNSEL**

Slavitt, King, Weiser & Perlberger and Jerome D. Fireman for Plaintiff and Appellant.

David R. Glickman for Defendants and Respondents.

**OPINION**

**ASHBY, J.**—This is a dispute over fees, between attorneys who acted as cocounsel representing a plaintiff minor in a medical malpractice case. The minor's case was settled, and pursuant to its power to approve such compromise under Code of Civil Procedure section 372, the trial court apportioned between the plaintiff's attorneys the attorneys' fees which the defendant had agreed to pay. The court determined that the fees should be divided in the manner the attorneys had originally agreed between themselves, one-third to appellant Breckler and two-thirds to respondents Halpern and Thaler. Contending the original agreement is unenforceable, Breckler appeals from the order apportioning fees.

Following an auto accident, the minor, Vladimir Martinez, then approximately one year old, was admitted to Los Angeles County USC Medical Center on September 5, 1973, and allegedly as the result of negligent medical diagnosis and treatment became a paraplegic.

On August 23, 1974, Milton Martinez, individually and as guardian ad litem of Vladimir Martinez, filed a complaint against the county for personal injuries and damages. Martinez was represented by respondents Halpern and Thaler. Thereafter respondents successfully petitioned for relief under Government Code section 946.6 from failure to file a timely claim with the county.

Sometime in early 1974 Thaler had introduced Halpern to appellant Breckler. Breckler was a doctor licensed to practice medicine in California and at that time was also awaiting the results of the California Bar examination. Halpern requested Breckler to review the medical records of Vladimir Martinez, and Breckler concurred in Halpern's opinion there

had been medical malpractice. Breckler then became licensed to practice law in July 1974.

Thereafter, with the client's consent, Breckler became associated as cocounsel in order to utilize his medical expertise. It was agreed that the Halpern firm would continue to be responsible for the legal pleadings, notices, and trial settings, would be cocounsel in the trial should a trial be necessary, would continue to be responsible to the client for all client communications, and would advance the necessary costs for the prosecution of the case. Breckler was to pursue the medical issues involved, depose the doctors, prepare the case for trial, and be cocounsel at the time of trial. It was agreed that Breckler would get one-third of the total attorneys' fees received by the Halpern firm at the time of judgment or settlement, and that the Halpern firm would get two-thirds. This understanding was confirmed in a letter dated August 6, 1975. The client was informed of the fee arrangement and was told the total fee would not be increased on account of appellant's becoming associated as counsel. On August 21, 1975, a substitution of attorneys was filed, substituting both the Halpern firm and Breckler as attorneys of record.

Halpern and Breckler attended a trial setting and mandatory settlement conference on April 20, 1976. Halpern, Thaler and Breckler attended another settlement conference on March 11, 1977 (with Judge Wapner), at which the case was settled. The settlement provided that the defendant County of Los Angeles would purchase an annuity for the minor in the amount of $23,000 per year for the first five years and $15,000 per year thereafter for the life of the minor, would pay $135,000 from which a portion would be expended for the down payment on a home, home alterations and equipment, and a van with a hydraulic lift, would pay $22,000 to counsel for plaintiff towards costs and expenses incurred, and would pay $200,000 to counsel for plaintiff as attorneys' fees.

Judge Wapner assigned to Breckler the primary responsibility for completing the settlement papers. Breckler prepared the petition of the guardian ad litem for court approval of the compromise pursuant to Code of Civil Procedure section 372. On March 18, 1977, Breckler obtained an ex parte order that the funds from the defendant be made payable to Milton Martinez and I. Alfred Breckler to be deposited to Breckler's trust account and disbursed as ordered by the court.

Judge Peracca approved the compromise settlement on April 15, 1977, and the action was dismissed. With respect to the $222,000 for costs and

attorneys' fees, the court ordered that the actual costs in excess of $22,000 to be taken out of the attorneys' fees[1] and that "[f]inal disbursement and apportionment of attorneys' fees . . . be determined by order of the Honorable Joseph A. Wapner, Judge, Superior Court, Department 37, upon his return from vacation."

On June 6, 1977, appellant Breckler filed a "motion for order for apportionment of attorneys fees." Appellant set forth the attorneys' August 1975 agreement but repudiated it, contending that it violated the rules of professional conduct for members of the bar and was therefore unethical and unenforceable.[2] Appellant contended that the work he had done on the case entitled him to a greater share of the total fee than one-third. The motion was opposed by respondents Halpern and Thaler who contended that the agreement was enforceable. By minute order of June 24, 1977, and final order of August 29, 1977, Judge Wapner ruled that the attorneys' fees remaining after deduction of excess costs be divided in accordance with the contract, one-third to appellant and two-thirds to respondents. The court ordered Breckler, who had control of the funds, to pay the Halpern firm its two-thirds share. Breckler appeals from the order of apportionment.

## MOTION TO DISMISS APPEAL

Preliminarily respondents contend the appeal should be dismissed because (1) the order apportioning fees came after the dismissal of the action, and there was no further jurisdiction in the matter; (2) the order appealed from is not appealable; and (3) appellant Breckler is not "a party to the action." These contentions are without merit. The court expressly reserved jurisdiction to apportion the fees and had continued power to dispose of the fund under its control. (*Lord* v. *Superior Court,* 27 Cal.2d 855, 857-858 [168 P.2d 14]; see Code Civ. Proc., § 372.) ■ The order apportioning fees is an appealable order after final judgment under Code of Civil Procedure section 904.1, subdivision (b). (See *Raff* v. *Raff,* 61 Cal.2d 514, 519 [39 Cal.Rptr. 366, 393 P.2d 678]; *Fulton* v. *Fulton,* 220 Cal. 726, 728-729 [32 P.2d 634].)

---

[1]Actual costs were $25,272.65, leaving $196,727.35 for attorneys' fees.

[2]Several times in 1976 Breckler expressed to Halpern and Thaler his dissatisfaction with their fee arrangement and had proposed modifying it, but Halpern and Thaler did not agree.

■ Respondents' argument that appellant is not a "party to the action" (i.e., the action entitled Martinez v. County of Los Angeles) and cannot maintain an appeal (see generally 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 114-116, pp. 4114-4115), is not persuasive. Appellant was not a stranger to the record as in cases cited by respondents. Appellant appeared by motion and obtained an adverse ruling requiring him to pay certain amounts from funds in his hands and subject to the court's jurisdiction. (See *Anglo-Californian Bank* v. *Superior Court,* 153 Cal. 753, 756 [96 P. 803]; *Estate of Partridge,* 261 Cal.App.2d 58, 61-62 [67 Cal.Rptr. 433].) Appellant was a party to the record insofar as the collateral motion regarding attorneys' fees is concerned. (See *Anglo-Californian Bank* v. *Superior Court, supra; McClearen* v. *Superior Court,* 45 Cal.2d 852, 856 [291 P.2d 449].) Appellant's standing to appeal is supported by the recent case of *Bauguess* v. *Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942]. There the Supreme Court held that the attorney for the plaintiff in a personal injury case could appeal an order which required him to pay the defendant's attorneys' fees as a sanction for misconduct causing a mistrial. The court stated: "The order imposing sanctions is appealable as a final order on a collateral matter directing the payment of money. . . . Although [the attorney] was not a party in the main action, he was made a party of record in the collateral matter by the court's order." (22 Cal.3d at p. 634, fn. 3.)

### ENFORCEABILITY OF AGREEMENT

■ Appellant contends that the agreement to divide the attorneys' fees on a one-third, two-thirds basis was violative of the rules of professional conduct for members of the bar and therefore was against public policy and unenforceable. We conclude that the contract in the present case involved a division of responsibility and services and was not violative of the ethics of the profession.

The parties are agreed that a fee-splitting arrangement "involving no services rendered or responsibility assumed by the referring attorney but only a bare referral" is condemned by professional ethical standards and may be denied enforcement. (*Altschul* v. *Sayble,* 83 Cal.App.3d 153, 160 [147 Cal.Rptr. 716]; see also *Emmons, Williams, Mires & Leech* v. *State Bar,* 6 Cal.App.3d 565 [86 Cal.Rptr. 367].) Rule 2-108 of the Rules of Professional Conduct of the State Bar of California[3] provides:

---

[3]The rules are published in West's Annotated California Codes, volume 3B, Business and Professions Code (1978 cum. pocket supp.) following section 6076, at page 56, and in Deering's California Codes Annotated Rules (1976 ed.) at page 581.

"A member of the State Bar shall not divide a fee for legal services with another person licensed to practice law who is not a partner in or associate of his law firm or law office, unless:

"(1) The client consents to employment of the other person licensed to practice law after a full disclosure that a division of fees will be made; and

"(2) The division is made in proportion to the services performed or responsibility assumed by each; and

"(3) The total fee charged by all persons licensed to practice law is not increased solely by reason of the provision for division of fees." (Deering's Cal. Codes Ann. Rules (1976 ed.) rule 2-108, p. 604.)[4]

Here, however, there was not a straight referral but a true division of services and responsibility by attorneys who acted as cocounsel. Respondents performed substantial services and assumed substantial responsibilities in the case.

First, respondents filed the suit and obtained the necessary relief under the governmental claims statutes. Second, respondents were responsible to the client for all communications and conferences. When the settlement was reached, it was respondents, not appellant, who advised the client whether to accept it. The client declared that at all times he looked to Halpern as his attorney responsible for the handling of the case and did not rely upon appellant. Third, it was agreed that respondents would be responsible for legal pleadings and notices and would be cocounsel in the trial should a trial be necessary. Fourth, respondents were responsible for advancing funds for the costs of the suit, which were substantial.

---

[4]The current Rules of Professional Conduct were effective January 1, 1975, and were thus applicable to the August 1975 agreement in this case. Rule 2-108 is similar to its predecessor, rule 22, which was adopted in November 1972. Prior to 1972 such fee-splitting agreements were not the subject of a specific disciplinary rule in California, which was one of the last states to adopt such a rule. (Kohlman, *An Equitable Contingency Fee Contract*, 50 State Bar J. 268, 271.) Rule 1 has long provided, however, that the Canons of Professional Ethics, and the subsequent Code of Professional Responsibility of the American Bar Association "should be noted by the members of the State Bar." Canon 34 had provided that "[n]o division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility," and a number of ABA opinions interpreting that canon condemned the pure referral. (Formal Opns. of ABA Committee on Prof. Ethics, Nos. 153 (1936), 204 (1940), and Informal Opns. Nos. 848 (1965), 932, 936 (1966).) Canon 34 was superseded on January 1, 1970, by the ABA Code of Professional Responsibility, Disciplinary Rule DR2-107, which is substantially similar to our rule 2-108.

Appellant, on his part, was "to pursue the medical issues involved, depose the doctors, prepare the case for trial, and be co-counsel . . . at the time of trial."

Thus there was a true division of services performed and responsibility assumed by the attorneys. The client consented to the association of appellant after full disclosure that appellant would receive one-third of the total fee and that the total fee would not be increased by reason of such agreement, thus satisfying rule 2-108. This case bears no resemblance on its facts to *Altschul* v. *Sayble, supra,* 83 Cal.App.3d 153, 158, 165, where the only work the referring attorney did was to interview the client, hire an investigator, write a letter, and allegedly stand "ready and willing to render assistance" to the other attorney. *Altschul* involves a case where there were no substantial services performed or responsibilities assumed by the referring attorney, while here there were substantial services performed and responsibilities assumed by the original attorneys.

We do not accept appellant's contention that in light of rule 2-108 the court must disregard the agreement and must apportion the fees solely according to an after-the-fact analysis of the services which were actually performed. Attorneys should be permitted to agree in advance what division of fees there will be, so long as they make a good faith attempt at the time of agreement to anticipate the proportions of services to be performed and responsibilities to be assumed, and otherwise comply with rule 2-108. (See Informal Opn. No. 391 (1960) of the ABA Committee on Prof. Ethics (". . . it is the position of this Committee that any good faith division of fees between lawyers based upon the extent of the services rendered by each, and the degree of responsibility assumed by each is proper").) As a practical matter these proportions are extraordinarily difficult to measure. (ABA Informal Opn. No. 848 (1965).) We should not impose upon the trial courts the burden of independently assessing these proportions, after the fact, in every case involving an agreement dividing responsibility and services. Where there is substantial division of services or responsibility, the agreed division of fees should ordinarily be controlling. (See *Bohm* v. *Holzberg* (1972) 69 Misc.2d 689 [329 N.Y.S.2d 907, 908-909].) If the trial courts had to reassess the relative contributions of the attorneys at the end of every case, endless litigation between attorneys would be spawned. (See *Mason* v. *Levy & Van Bourg,* 77 Cal.App.3d 60, 67 [143 Cal.Rptr. 389].)

We find no indication here justifying a departure from the agreement of the attorneys. Both parties performed substantial services. Both parties

willingly assumed certain risks, respondents the risk of financing the costs, appellant the risk of a lengthy trial which would reduce his hourly rate of compensation. Respondents remained responsible to the client, who looked to respondents as his attorneys. The agreement might also have taken into account appellant's inexperience as an attorney.[5] We conclude that the requirements of rule 2-108 were satisfied in this case and that the trial court correctly determined the contract between attorneys for dividing the fees was valid and enforceable.

The order apportioning fees is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

---

[5]Although not making findings, the trial court commented that Breckler had performed more services than Halpern and Thaler. In light of the responsibilities assumed by both parties, the mere fact that at the time of settlement Breckler had performed more services than Halpern and Thaler would not itself justify disregarding the agreement.