FRANK H. SCHNIEDERJON, Plaintiff-Appellant, v. JOHN KRUPA *et al.*, Defendants-Appellees.

Fifth District   No. 5—83—0546

Opinion filed January 28, 1985.

Harlan Heller, Ltd., of Mattoon, for appellant.

Donald A. Shapiro, of Chicago, for appellees.

JUSTICE TRAPP delivered the opinion of the court:

Plaintiff, Frank Schniederjon, an attorney, sued the partners of the law firm LeVine, Krupa, Wittenberg, Eisner, Newman & Silverman for

breach of a verbal agreement. Plaintiff sought recovery of one-half of the attorney fees paid under a contingent fee arrangement. Defendant moved for summary judgment, and the trial court granted the motion. Plaintiff appeals, contending the court erred in holding the agreement was unenforceable as a matter of law.

The present suit arose out of an action for legal malpractice brought on behalf of Frances Traub. Traub originally retained attorney Carroll Baylor to bring suit for the wrongful death of her husband. Baylor did not file suit until the applicable statute of limitations period had lapsed, and the suit was dismissed. On December 30, 1976, Traub's relatives brought her to plaintiff to inquire about filing suit against Baylor. Plaintiff told Traub that he was not certain whether he wanted to represent her. He wanted some time to determine if there was a case against Baylor. Plaintiff asked Traub to return on February 17, 1977.

Plaintiff maintains he investigated the facts of the case and researched the law between December 30 and February 17. On February 17, Traub and her relatives returned. Plaintiff contends he agreed to represent Traub but told her that he would employ another attorney to file the suit. He informed her that he would remain responsible and that he and the other attorney would split the fee. Plaintiff told Traub the case would be taken on a contingent fee basis, and, therefore, she would incur no additional expense in hiring a second attorney. Traub told him to contact another attorney.

Plaintiff contacted defendant John Krupa on February 21. Plaintiff informed Krupa that he had previously worked with Baylor and did not want to personally litigate Traub's case. Plaintiff and Krupa agreed to split any fee recovered equally, with the express understanding that plaintiff would not appear in court for any reason. Plaintiff would be available for research and investigation of facts. His office would be at Krupa's disposal for depositions, meetings, and interviews of witnesses. Plaintiff agreed to be present at depositions, but he would not actually interview the witnesses. In his deposition, Krupa acknowledged that he had agreed to split any money received in return for the referral and for plaintiff's cooperation in preparing the case.

The two attorneys then met with Traub and her relatives. Plaintiff told Traub that he would remain responsible for Krupa's handling of the case. The fee charged would be one-third of any money recovered, and he and Krupa would each get one-half of that. Plaintiff then left Krupa with Traub so they could discuss the case.

On August 1, Traub and her relatives returned to plaintiff's office. They were concerned about the progress of the case. Plaintiff gave

Traub a copy of a letter sent by Krupa to Baylor's insurance carrier. Plaintiff also dictated a letter to Krupa stating Traub's concern and suggesting Krupa file a complaint as soon as possible.

In August, Krupa referred the case to defendant Arnold Newman, who later became a partner in the LeVine firm. While Newman did not know of the specific fee arrangement then, he did become aware of it prior to the trial of Traub's case. On August 30, Newman wrote to plaintiff requesting copies of the police report, witness' statements, and any investigation reports of the accident in which Traub's husband died. Newman also requested any information on the financial condition of the defendants in the wrongful death case. On September 14 and 15, plaintiff sent his associate, Henry Stephens, to Louisville and Flora, Illinois. Stephens went to the accident site, and he talked to the local police. Stephens also attempted to find possible witnesses and any information concerning the financial status or insurance of the defendants in the wrongful death action. He obtained the file of the wrongful death case and a copy of the accident report from the State police. Stephens sent the report and case file to Newman.

Newman denies ever receiving this information. He called plaintiff, who stated that the LeVine firm was to handle the case and he did not want to get involved. Plaintiff maintains Newman called and asked him to appear in court. Plaintiff declined because his agreement with Krupa expressly stated he would not appear in court.

The LeVine firm eventually referred Traub's case to attorney Donald Shapiro. Shapiro was to receive two-thirds of the contingent fee. He tried the case and obtained a judgment for $150,000. After the trial, he negotiated a settlement for $120,000. Shapiro took his two-thirds of the $40,000 fee. Defendants discussed splitting their portion of the fee. They decided to give plaintiff $2,000. Plaintiff did not know the case had been tried or settled. When he found out about the settlement, he demanded $20,000 from defendants. They refused, and he filed suit.

Defendants moved for summary judgment, contending the fee-splitting agreement was contrary to public policy. They alleged there was no attorney-client relationship between Traub and plaintiff. They filed affidavits from Traub, her mother, and her in-laws, who all stated plaintiff had declined to represent Traub and Traub had hired only Krupa to represent her. Defendants also maintained plaintiff had performed no legal services under the agreement. The trial court decided there was no issue of material fact and held the fee-splitting contract was unenforceable.

■■ ■ Defendants do not dispute the existence of the contract to

divide fees with plaintiff. Instead, they argue the contract was void as against public policy when made. Our courts apply a strict test in determining whether a contract violates public policy. (*J&K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 889.) A court, therefore, will not declare a contract illegal unless it expressly contravenes the law or a known public policy of this State. (*J.E.L. Realtors, Inc. v. Mettille* (1982), 111 Ill. App. 3d 987, 444 N.E.2d 750.) Moreover, public policy itself strongly favors freedom to contract. *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.* (1983), 95 Ill. 2d 68, 72, 447 N.E.2d 400, 402.

> "In considering whether any contract is against public policy it should be remembered that it is to the interests of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts. Agreements are not held to be void, as being contrary to public policy, unless they be clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless they be manifestly injurious to the public welfare." *Schumann-Heink v. Folsom* (1927), 328 Ill. 321, 330, 159 N.E. 250, 254.

In *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 417 N.E.2d 764, the court held an attorney may not share in a fee with other attorneys when the only service he renders is the referral of the case. The plaintiff in *Corti*, after being terminated, sought recovery of fees derived from clients referred by him to his employer pursuant to an employment agreement. The court held the agreement was contrary to public policy.

The *Corti* court first looked to other Illinois cases addressing intra-attorney fee-sharing arrangements. In each case, the court upheld such an agreement. (See *Parker v. Gartside* (1913), 178 Ill. App. 634; *Monahan v. Heirich* (1955), 4 Ill. App. 2d 373, 124 N.E.2d 39; and *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.) The *Corti* court found a common thread running through each, which required an attorney to perform services or exercise some degree of responsibility before sharing in the fee. The court decided an agreement to split fees merely for a referral is injurious to the best interests of the client because it reduces the motivation of the recipient attorney to use his best efforts in resolving the client's case. (*Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 523, 417 N.E.2d 764, 769-70.) In *Corti*, the agreement did not require the referring attorney to perform any services. Moreover, the agreement was not revealed to the clients involved.

The court in *Corti* relied in part on Disciplinary Rule 2—107(A) (DR 2—107(A)) of the American Bar Association Code of Professional Responsibility, which provides:

"A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) The division is made in proportion to the services performed and responsibility assumed by each.

(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client."

■ Plaintiff contends DR 2—107(A) did not represent the public policy of this State when the parties entered in the fee arrangement. Generally, the validity of the contract is determined under the law as it existed when the contract was made. (*Davies v. Arthur Murray, Inc.* (1970), 124 Ill. App. 2d 141, 156, 260 N.E.2d 240, 248.) Neither the supreme court nor the legislature had adopted the ABA Code at the time of the contract. In 1980, the supreme court adopted the Illinois Code of Professional Responsibility. The Illinois Code allows an attorney to share in a fee even when his primary service is the referral of the client. The attorney must fully disclose to the client the extent and basis of any economic benefit that he will receive and he must agree to remain responsible as if he were the other lawyer's partner. (87 Ill. 2d R. 2—107(a)(2).) Because this rule had not been adopted when the contract was made, both parties concede it is not applicable to the present suit. Prior to the adoption of the Illinois Code, however, the supreme court had indicated that while canons of ethics are not laws, they do constitute a safe guide for professional conduct, and they may be applied in the interest of protecting the public. *In re Hallett* (1974), 58 Ill. 2d 239, 250, 319 N.E.2d 48, 54.

■ Defendants argue the agreement violated DR 2—107(A) because no attorney-client relationship existed between Traub and plaintiff. Defendants rely on the affidavits of Traub and her family. In reviewing an order granting summary judgment, however, the court must view all the facts in a light most favorable to the nonmoving party. (*Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1099, 441 N.E.2d 860, 863.) In his deposition, plaintiff alleged Traub had agreed to retain him along with Krupa after he fully disclosed the fee arrangement. Thus, a genuine issue of material fact exists on this point.

Defendants also allege that DR 2—107(A), as well as the *Corti* de-

cision, precludes plaintiff from recovering one-half of the fee because he did not perform any services. Plaintiff notes that, unlike *Corti*, his agreement required him to perform services other than the mere referral. Additionally, unlike *Corti*, the agreement was disclosed to the client, who could then protect her own interests. Plaintiff maintains he performed all services requested of him. He concludes defendants now complain only because they failed to ask him to do more.

Defendants argue the contract itself is irrelevant and any division of fees must be based on the actual participation in or handling of the case. They rely on *Palmer v. Breyfogle* (1975), 217 Kan. 128, 535 P.2d 955, also cited in the *Corti* case. *Palmer*, however, did not deal with an express agreement to divide fees. There was no arms-length bargaining over the division of service and responsibility. Thus, there was no strong public policy in favor of awarding the attorney a share of the fee.

In Formal Opinion 204, issued on November 23, 1940, the ABA Standing Committee on Professional Ethics decided that although the division of fees must be based on sharing service and responsibility, it would not measure the proportions thereof or apportion the fees. The division presents no problem unless the total fee to the client is flagrantly excessive. Cases addressing agreements to split fees have held they are valid and enforceable despite a claim that one attorney contributed negligibly toward the earning of the fee, especially when the attorney never refused to contribute more substantially. (*Carter v. Katz, Shandell, Katz & Erasmous* (1983), 120 Misc. 2d 1009, ___, 465 N.Y.S.2d 991, 998.) No ethical or legal problem, therefore, arises when an attorney who seeks his share of the fee contributed some work, labor or service toward earning the fee. *Oberman v. Reilly* (1978), 66 App. Div. 2d 686, 687, 411 N.Y.S.2d 23, 25.

■ Plaintiff's evidence reveals he did perform some work on the case. He met with a client on one occasion, and his associate investigated the underlying claim as requested by defendants. Finally, plaintiff contends he performed some initial research, and he informed Traub that he would accept responsibility for the litigation. These services alone are sufficient to enforce the contract. *Bohm v. Holzberg* (1972), 69 Misc. 2d 469, 329 N.Y.S.2d 907.

For the foregoing reasons, the order of the court granting summary judgment is reversed, and the cause is remanded.

Reversed and remanded.

GREEN, P.J., and MILLS, J., concur.