FRANK H. SCHNIEDERJON, Plaintiff-Appellee and Cross-Appellant, v. JOHN KRUPA et al., Defendants-Appellants and Cross-Appellees.

Fifth District   No. 5—86—0415

Opinion filed October 5, 1987.

GREEN, J., dissenting.

Howard M. LeVine, of LeVine, Wittenberg, Eisner, Newman & Silverman, of Homewood, for appellants.

Harlan Heller, of Harlan Heller, Ltd., of Mattoon, for appellee.

JUSTICE LUND delivered the opinion of the court:

Defendants were sued by plaintiff over the terms of an oral contract providing for fee sharing. All parties are attorneys. The circuit court of Effingham County, sitting as trier of the facts, entered judgment for plaintiff against defendants in the amount of $20,000. Plaintiff was denied prejudgment interest. Defendants appeal alleging it was error to enter the $20,000 judgment. Plaintiff appeals alleging it was error to deny prejudgment interest.

Frances Traub's husband was killed in an automobile accident, and her first lawyer, Carrol Bayler, failed to bring a wrongful death action within the statute of limitations. Frances Traub, at least together with her father-in-law, Victor Traub, had a conference with plaintiff seeking his services in suing Bayler for legal malpractice. After determining that Frances Traub had a good cause of action, plaintiff, on February 17, 1977, met with Mr. and Mrs. Victor Traub and Frances Traub and discussed the merits of the case. He informed the Traubs he knew Bayler, was currently on opposite sides with him in a legal proceeding, and basically could not jeopardize the interest of his other client by suing Bayler. At plaintiff's suggestion, plaintiff obtained a Chicago attorney, John Krupa, to represent Frances Traub in the legal malpractice suit against Bayler. A written one-third, two-thirds contingent-fee contract was executed between Frances Traub and Krupa. Plaintiff's name was not mentioned in the agreement. Later, outside the presence of the Traubs, plaintiff and Krupa agreed to split Krupa's fee 50-50. Krupa did not inform Frances Traub of the 50-50 arrangement. While plaintiff testified he told the Traubs that he and Krupa would split the fee, he did not specifically remember mentioning a 50-50 division. The Traubs and Frances Traub's mother, Verna Williams, who was also present, only remember reference to plaintiff's getting a small fee for the use of his office.

The only services performed by plaintiff's office related to a new associate's spending a couple of days investigating the cause of action. Plaintiff refused to participate in any court proceedings against Bayler. The evidence indicates no additional participation by plaintiff or his firm.

The work on the case against Bayler evidently went from Krupa to defendant Arnold Newman, and then to attorney Donald Shapiro,

who was not a member of Krupa's law firm. Shapiro did all the pre-trial discovery and successfully tried the case to a $150,000 verdict. Bayler then settled with Frances Traub for $120,000. Shapiro took $26,666.67 for his services, and Krupa's old law firm was paid $13,333.33.

Both attorney Newman and attorney Shapiro testified they contacted plaintiff for assistance with routine matters involving the Bayler case but received refusals. Plaintiff denies these contacts. Plaintiff admitted he did not know of the trial and settlement until after hearing of the settlement during courthouse chatter.

Plaintiff, while stating his reservations about participating in the case against Bayler, did inform the Traubs he would be responsible for the case. He contends there was an attorney-client relationship between Frances Traub and himself. While the existence of the relationship is in doubt, considering plaintiff's lack of participation and his failure to take any responsibility as indicated by his lack of knowledge of the status of the case, we assume an attorney-client relationship for the purpose of this opinion.

This matter was before this court once before in *Schniederjon v. Krupa* (1985), 130 Ill. App. 3d 656, 474 N.E.2d 805 (*Schniederjon I*). That case arose from a ruling in the trial court for the defendants on a motion for summary judgment. In that case, we reversed the order for summary judgment. The facts now before us evolved from the trial on the merits, in contrast to the limited affidavits and depositions in the previous record. In *Schniederjon I*, we recognized that the oral contract between plaintiff and Krupa predated the adoption of Rule 2—107(a) of the Illinois Code of Professional Responsibility (107 Ill. 2d R. 2—107(a)). Yet, we stated that Rule 2—107(a) in its previous status as an ethical guideline could still be applied to the case. (*Schniederjon v. Krupa* (1985), 130 Ill. App. 3d 656, 660, 474 N.E.2d 805, 809.) In that regard, we held, in part, that an issue of material fact existed as to the knowledge by Frances Traub of the 50-50 split agreement. 130 Ill. App. 3d 656, 660, 474 N.E.2d 805, 809.

■ Disciplinary Rule 2—107(A) of the American Bar Association Code of Professional Responsibility (Model Code of Professional Responsibility Canon 2 (1979)) provides, in part:

"A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made."

We cite with approval the opinion in *Corti v. Fleisher* (1981), 93 Ill.

App. 3d 517, 521, 417 N.E.2d 764, 768, which states that a fiduciary duty is owed by attorneys to their clients. This fiduciary duty, as indicated by the *dicta* in both *Schniederjon I* and *Corti* discussing Rule 2—107(a) and its ethical predecessors, extends to the full disclosure of fee-sharing agreements. (*Schniederjon v. Krupa* (1985), 130 Ill. App. 3d 656, 660, 474 N.E.2d 805, 808-09; *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 529-31, 417 N.E.2d 764, 773-74.) Clients had the right to know of fee-splitting agreements in 1977, the date of the agreement in *Corti*, as well as in 1987.

The disclosure requirement is based on an important public policy. Clients are entitled and required to place confidence in their attorneys. Clients necessarily rely on attorneys' decisions and representations. When Frances Traub executed the contingent-fee contract with Krupa, she had a right to assume a one-third fee was an inducement, or motivation, to Krupa to use his and his firm's best efforts in obtaining the maximum dollar in a reasonable period of time. We need not comment about the difference in the financial inducement between a one-third fee and one-sixth fee. The public policy issue now before us requires a holding that contracts of fee splitting must be specifically disclosed by attorneys to their clients in full, and if not, the contracts will not be enforced by the courts. In this case, plaintiff has asserted he had an attorney-client relationship with Frances Traub. Hence, he owed her a fiduciary duty and a duty to specifically disclose the fee agreement plaintiff made with Krupa.

■■ We hold, after an examination of all the evidence, that the finding by the trial court that the fee-sharing agreement was disclosed to Frances Traub is against the manifest weight of the evidence. We specifically refer to plaintiff's financial interest in the case and the effect of this on the value of his testimony, together with the Traubs', who had no interest in the case, failure to remember anything about the 50-50 split.

There are arguments on both sides as to the equities between the parties. They are not important. It does not matter whose ox is gored. The courts will not enforce an agreement when it is found to be against public policy.

Because of our decision herein, we need not discuss the issue on cross-appeal. The order of the circuit court of Effingham County is reversed for the reasons stated above.

Reversed.

KNECHT, J., concurs.

JUSTICE GREEN, dissenting:

As indicated by the majority, Rule 2—107(a)(1)(b) of the Code of Professional Responsibility was adopted effective July 1, 1980, and provides that when a contract for division of fees is entered into between attorneys, they must advise the client of the "basis upon which the division will be made" (107 Ill. 2d R. 2—107(a)(1)(b)). The majority would apply that requirement to fee-splitting arrangements entered into prior to that date. I am not convinced that precedent so requires. While the gross disparity between work performed by plaintiff here and the portion of fee which he requests invites such a holding, I am concerned with the effect which our decision may have on other more reasonable arrangements for division of fees between attorneys entered into prior to July 1, 1980, where attorneys might not have thought that disclosure to the client was required as to the portion of the fee each attorney was to receive.

Reversal of the award is not required here in order to set a standard for future arrangements between attorneys because Rule 2—107(a)(1)(b) does that. The fee which the client was required to pay was not affected by the nature of the split. The even division of fees which defendants refuse to pay was agreed to by their partner. Under the circumstances, I deem the wiser and proper course to be to affirm the award of one-half of the fee to the plaintiff. I dissent from the proposed reversal of the award for that reason.

Notably, Disciplinary Rule 2—107(A) of the American Bar Association Code of Professional Responsibility (Model Code of Professional Responsibility Canon 2 (1979)) does not expressly state that the percentage of the fee that each lawyer is to take must be disclosed to the client. Rather it merely requires "a full disclosure that a division of fees will be made." The opinion in *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 529-30, 417 N.E.2d 764, 774-75, refers to a similar American Bar Association rule which requires full disclosure that a division of fees is to be made but makes no express requirement that the percentages in the division of fees be disclosed to the client. The *Corti* opinion says nothing about a requirement that the nature of the division of fees be given to the client.

I recognize that the force of this dissent is somewhat lessened by our decision in the first appeal (*Schniederjon v. Krupa* (1985), 130 Ill. App. 3d 656, 474 N.E.2d 805) in which I concurred in the opinion of the court. There, this court held that summary judgment was improperly granted for the defendants, because a factual issue existed as to whether an attorney-client relationship existed between the client and plaintiff depending upon whether the client had agreed to retain

plaintiff after plaintiff "[had] fully disclosed the fee arrangement." (*Schniederjon v. Krupa* (1985), 130 Ill. App. 3d 656, 660, 474 N.E.2d 805, 809.) The evidence before the court in ruling on the motion for summary judgment contained a deposition in which plaintiff testified that he had told the client that the fee was to be split evenly. As the majority has indicated, plaintiff testified at trial that he could not remember whether he informed the client as to the manner in which the fee was to be split. Thus, the evidence before the court at trial was weaker on the question of the details of the fee arrangement given by plaintiff to the client than it was at the hearing on the motion for summary judgment.

Despite the words of this court's opinion in the former case requiring a full disclosure of the "fee arrangement," I do not interpret that language as necessarily requiring disclosure as to the division of fees. Rather, it involved a recitation of the rules set forth in Rule 2—107A and *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 417 N.E.2d 764. Neither of these rules expressly advised attorneys that they need reveal the nature of the split of fees to their clients. Accordingly, neither the rule of the law of the case (*Bradley v. Howard Hembrough Volkswagen, Inc.* (1980), 89 Ill. App. 3d 121, 411 N.E.2d 535), nor the precedent of our previous decision requires that we reverse the judgment entered by the circuit court on remand.