**J. Walter DRAGELEVICH, Plaintiff,**

v.

**KOHN, MILSTEIN, COHEN & HAUSFELD, nka Cohen, Milstein & Hausfeld, a Partnership, et al., Defendants.**

**No. 4:90CV0691.**

United States District Court,
N.D. Ohio, E.D.

Nov. 28, 1990.

national Union of North America.

William B. Gore, Laybourne, Smith, Gore & Goldsmith, Akron, Ohio, for plaintiff.

James A. Calhoun, Calhoun, Benzin, Kademenos & Heichel, Mansfield, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

J. Walter Dragelevich claims that he is entitled to 20% of the attorneys' fees received by the law firm of Kohn, Milstein, Cohen & Hausfeld, pursuant to a fee-splitting agreement. Dragelevich brought this action against Kohn, Milstein and three members of the firm (collectively "Kohn,

Milstein"). Kohn, Milstein responds that the agreement cannot be enforced because 20% of the fees far exceeds Dragelevich's contribution to the underlying case. The Court concludes that Disciplinary Rule 2–107(A) precludes Dragelevich from claiming 20% of Kohn, Milstein's fees, and therefore summary judgment is entered in favor of the defendants.

I.

This dispute arises out of the parties' "joint" representation of Tauro Brothers Trucking Company in an antitrust action against several railroads. Tauro was a long-standing client of attorney J. Walter Dragelevich, and in 1982 Dragelevich and a principal representative of Tauro, Frank DeJute, discussed the possibility of filing the antitrust suit with Jerry Cohen, an attorney with the Washington, D.C., law firm of Kohn, Milstein, Cohen & Hausfeld. After the meeting, Dragelevich and Cohen exchanged letters indicating that Kohn, Milstein would serve as lead counsel in the lawsuit, and that Dragelevich would serve as local co-counsel. The attorneys contemplated that the case would be pursued on a contingency fee basis, and that any fees would be divided with 80% going to Kohn, Milstein, and 20% going to Dragelevich. However, if Dragelevich's involvement in the case exceeded that which was anticipated, his portion of the fees could be adjusted upward.[1]

In 1984, Tauro's lawsuit against the railroads was transferred to the Eastern District of Pennsylvania by the Judicial Panel on Multidistrict Litigation. The case ultimately went to trial in May 1989, and Tauro Brothers prevailed, but a number of post-judgment matters are apparently still

---

1. On November 17, 1982, Cohen wrote as follows to Dragelevich:

Pursuant to our conversation, it is my understanding that you will participate in this case as local counsel and will play an active role, particularly in regard to the participation of your client, Mr. DeJute, with particular emphasis on the operation of his business, depositions which the defendants may take of him, and document production.

It is my further understanding that we are tentatively agreeing to splitting any fee we

may recover on your client's behalf, with 80% going to our firm and 20% to you. At the conclusion of this matter, if the time which you devoted to the case proves to be greater than now anticipated, fee adjustments will be made.

On December 1, 1982, Dragelevich responded to this letter, stating, "I accept your proposal to split the legal fees on a 80%—20% basis as set forth in your November 21, 1982 letter."

pending. Kohn, Milstein has submitted affidavits indicating that it has expended upwards of 5000 hours in that case, including more than 4000 hours of attorney time. Dragelevich claims that Kohn, Milstein has received approximately $800,000 in attorneys' fees.

Dragelevich prepared an affidavit in support of Tauro's application for attorneys' fees following judgment in the antitrust case; Dragelevich attested to having spent 134.9 hours on the matter, the majority of which were prior to the case's transfer to the Eastern District of Pennsylvania. Dragelevich characterized his involvement in the case as follows:

> Initial determination regarding legal liability of defendants, research of applicable law, development of supporting facts, attendance at meetings and conferences with clients and attorneys, review of case records and other related pending litigation, monitoring litigation, review of business records and documents of client, served as local counsel while litigation pending in U.S. District Court for Northern Ohio and co-counsel for client in pending litigation.

Dragelevich stated that the "total lodestar amount" for his time in the case was $16,188.

Dragelevich now claims that he has received no compensation at all for his role in Tauro's representation, and he filed this lawsuit contending simply that he is entitled to 20% of Kohn, Milstein's fees.

## II.

■ The parties have filed cross-motions for summary judgment, and they agree on the essential facts. *See* Fed.R.Civ.P. 56, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolution of this case depends upon whether a fee-splitting agreement between attorneys is enforceable when the actual contribution of an attorney in the case differs substantially from the proportion of fees to which he would be entitled under the agreement. That question, in turn, is governed by Disciplinary Rule 2–107(A) of the Code of Professional Responsibility, adopted by the Ohio Supreme Court in 1970.[2]

Disciplinary Rule 2–107(A) provides:

> A lawyer shall not divide a fee for legal services with another lawyer who is not a partner or associate of his law firm or law office, unless:
>
> (1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
>
> (2) The division is made in proportion to the services performed and responsibility assumed by each.
>
> (3) The total fee of the lawyers does not clearly exceed reasonable compensation for all the legal services they rendered the client.

This rule, which replaced a more general ethical canon [3], was intended primarily to prohibit referral fees which had the potential of increasing the client's total cost. *See generally Palmer v. Breyfogle,* 217 Kan. 128, 535 P.2d 955, 965–66 (1975).

In this case, both parties agree that the client was fully aware of the fee-splitting arrangement, and neither party contends that the overall fees were anything but "reasonable". Thus, the question before this Court is whether allocating 20% of those fees to Dragelevich would be proper under subsection (2) of DR 2–107(A).[4]

Ohio courts have not directly addressed whether DR 2–107(A) permits enforcement of fee-splitting agreements where the fees

---

**2.** The parties agree that Ohio law applies since the purpose of the agreement was to provide representation of an Ohio client, and most of the performance would likely occur in Ohio. *See Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 820–22 (6th Cir.1990).

**3.** ABA Canon of Professional Ethics 34 (1908) provided:

> No division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility.

**4.** Dragelevich does not contend that he would be entitled to the 20% as a referral fee; Ohio law expressly prohibits referral fees for legal services. O.R.C. § 4705.08.

do not represent the attorneys' actual contribution to the case. However, language in several Ohio cases suggests that Ohio courts would not easily sanction such agreements. As the Ohio Supreme Court recently stated,

> [O]ne of the purposes of DR 2–107 is to prohibit the sharing of fees where there is a lack of services performed or responsibility to the client. The service and responsibility in the rule relate to an *actual participation in or work on the case.* Palmer v. Breyfogle (1975), 217 Kan. 128, 413, 535 P.2d 955, 966–967.

King v. Housel, 52 Ohio St.3d 228, 230, 556 N.E.2d 501, 504 (Ohio 1990) (emphasis added) [5]; *see also Spayd v. Turner, Granzow & Hollenkamp,* 19 Ohio St.3d 55, 62, 482 N.E.2d 1232, 1238 (Ohio 1985) ("The underlying philosophy of ... [DR 2–107] is aimed at the impermissive sharing of future fees where there is a lack of services performed, or responsibility to the client."); *Waterman v. Christy,* (Ohio App., 10th Dist., Feb. 8, 1990), slip op. at 8, 1990 WL 10982, 1990 Ohio App. LEXIS 467, *motion to certify record granted,* 52 Ohio St.3d 707, 557 N.E.2d 1216 (Ohio 1990) ("provided that the client consents to the arrangement after full disclosure is 'made in proportion to the services performed and the responsibility assumed by each,' fee splitting is permissible").

■ The parties have discussed numerous out-of-state authorities in support of their summary judgment motions. Clearly, a lawyer who performs no work at all on a case may not collect any portion of a fee under DR 2–107. *E.g., Palmer,* 535 P.2d at 967–69. Several courts have stated flatly that DR 2–107, or similar rules of practice [6], preclude any fee-splitting which is not proportionate to the lawyers' actual work on a case. *Matter of Berl,* 540 A.2d 410, 416 (Del.1988) (decided under Delaware Lawyers' Rule of Professional Conduct 1.5(e)(1), based on ABA Model Rule of Professional Conduct 1.5(e)(1), *see* footnote 9, *infra* ); *Matter of Diamond,* 72 N.J. 139, 368 A.2d 353, 354 (N.J.1976).

Others courts have suggested that an agreement to divide a contingency fee which does not necessarily accurately reflect the attorneys' participation in the case is valid so long as "there is 'a true division of services and responsibility.'" *Fitzgibbon v. Carey,* 70 Or.App. 127, 688 P.2d 1367, 1374 (Or.App.1984), *review denied,* 298 Or. 553, 695 P.2d 49 (Or.1985) (equal division of fees, as mandated by Oregon joint-venture law, proper in case where trial court found actual proportion of work to have been 75%–25%); *accord Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 824 (6th Cir.1990) (applying Pennsylvania law); *Breckler v. Thaler,* 87 Cal.App.3d 189, 151 Cal.Rptr. 50, 53–55 (Cal.App.1978) (construing California Rule 2–108, which is nearly identical to DR 2–107); *McNeary v. American Cynamid Co.,* 105 Wash.2d 136, 712 P.2d 845, 848 (Wash.1986) (equal division of contingency fee proper where trial court concluded that actual split should have been 60%–40%). Another formulation of this idea allows enforcement of fee-splitting agreements if each attorney "actually performed some substantial services" in a case. *Bohm v. Holzberg,* 69 Misc.2d 469, 329 N.Y.S.2d 907, 908–09 (N.Y.App.Term 1972) (permitting equal division of fees despite 80%–20% actual division of work, under former Ethical Canon 34, *see* footnote 3, *supra* ). These courts generally indicate that there must be at least some relation-

---

**5.** As Dragelevich points out, the supreme court continued by stating, "The rule is not meant to be used as a shield by an attorney in violation thereof to avoid enforcement of a valid fee agreement." *Id.* However, this language does not imply that Dragelevich is entitled to a 20% share of Kohn, Milstein's fees. First, under DR 2–107(A), a fee agreement is not "valid" if fees are to be split in any fashion other than proportionately to each attorney's participation in the case. Second, in *King* an attorney who failed to disclose an agreement to his client as required by DR 2–107(A)(1) sought to avoid compensat-

ing another attorney for work actually performed based on that technicality. The equitable considerations in *King* are not present in this case; in fact, the equities cut against Dragelevich since he seeks compensation far in excess of that to which he would be fairly entitled based on the work he actually performed.

**6.** Except where otherwise noted, all of the out-of-state cases discussed were decided under DR 2–107.

ship between the division of the fee and the amount of services performed by each attorney. *Macurdy*, 894 F.2d at 823–24; *McNeary*, 712 P.2d at 848; *see also Altschul v. Sayble*, 83 Cal.App.3d 153, 147 Cal.Rptr. 716 (Cal.App.1978) (attorney who initially interviewed client, hired an investigator, and claimed to have been "ready and willing to render assistance" to other attorney, could not recover portion of fee under DR 2–107).

Finally, some courts have permitted enforcement of fee-splitting agreements so long as each attorney "contributed *some* work, labor or service toward the earning of the fee." *Oberman v. Reilly*, 66 A.D.2d 686, 411 N.Y.S.2d 23, 25 (N.Y.App.Div. 1978) (emphasis added) (decision based only upon New York case law, without reference to disciplinary rules or ethical canons); *accord Schniederjon v. Krupa*, 130 Ill. App.3d 656, 85 Ill.Dec. 845, 849, 474 N.E.2d 805, 809 (Ill.App.1985) (equal division of fees permitted, even when one attorney performed only minimal preliminary work on case) [7]; *see also Stissi v. Interstate Ocean & Transport Co. of Philadelphia*, 814 F.2d 848 (2d Cir.1987) (applying New York law).

This Court concludes that Ohio courts would accept what appears to be the majority view, that DR 2–107(A) precludes enforcement of the agreement alleged in this case. The plain language of the rule provides that the division of fees among counsel must be "made in proportion to the services performed and responsibility assumed by each." In this case, the undisputed facts are that Dragelevich's actual work on the case did not remotely approach the 20% of fees he seeks to recover.[8] Even though DR 2–107(A) has been interpreted not to require strict penny-for-penny adherence to the ratio of work actually per-

formed under a fee-splitting agreements in some cases, *e.g.*, *McNeary*, 712 P.2d at 848, those cases generally require at least some relationship between the work performed and the proportion of fees permitted. Moreover, given the plain language of DR 2–107(A), as well as the tone of recent discussions by Ohio courts, it seems unlikely that Ohio courts would adopt an interpretation which would allow enforcement of this agreement so long as Dragelevich simply performed "some" work on the case.

Dragelevich relies heavily on *Gugle v. Loeser*, 143 Ohio St. 362, 55 N.E.2d 580 (1944), a case decided long before the supreme court's adoption of DR 2–107(A), to support the contrary position. In that case, the Ohio Supreme Court—quoting extensively from then-current treatises—suggested that fee-splitting agreements could be generally enforced even if one attorney performed more than his proportionate share of the work. *Id.* at 367–68, 55 N.E.2d at 582–83. Significantly, the *Gugle* court distinguished the United States Supreme Court case of *Weil v. Neary*, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 (1929), in the following manner:

> It was held there that an agreement for the division of fees, allowed in bankruptcy proceedings, between the attorneys for the trustee in bankruptcy and an attorney representing creditors of the bankrupt, *contrary to a rule of court,* was against public policy and void. In the instant case the petition does not suggest any elements of that nature.

*Gugle*, 143 Ohio St. at 368, 55 N.E.2d at 583 (emphasis added). While the Ohio Supreme Court went on to point out that the attorneys in *Weil* represented potentially divergent interests—which was not the case in *Gugle*—it is also of more than

---

**7.** Interestingly, in a later opinion in the same case, the Illinois appellate court held that the agreement was unenforceable because the evidence did not support a finding that the attorney had fully disclosed the fee-splitting agreement to the client. *Schniederjon v. Krupa* (*"Schniederjon II"*), 162 Ill.App.3d 192, 113 Ill. Dec. 189, 514 N.E.2d 1200 (Ill.App.1987), *appeal denied,* 118 Ill.2d 552, 117 Ill.Dec. 232, 520 N.E.2d 393 (Ill.1988). As noted, the Ohio Su-

preme Court would not hold a fee-splitting agreement unenforceable based on that sort of technicality. *King,* 52 Ohio St.3d 228, 556 N.E.2d 501.

**8.** Comparing Dragelevich's hours with Kohn, Milstein's attorney hours would produce a ratio of 134.9/4136, or approximately 3% of the total attorney time spent on the case.

passing interest that, since *Gugle,* the Ohio Supreme Court adopted a rule which seems clearly to preclude fee-splitting which does not represent the proportion of work performed by each attorney.[9] Finally, the fact that *Gugle* continues to be cited for other propositions does not imply its continued validity for a proposition in direct contradiction to the current rules adopted by the Ohio Supreme Court. *E.g., Duriak v. Globe American Casualty Co.,* 28 Ohio St.3d 70, 73, 502 N.E.2d 620, 623 (Ohio 1986) (enforcing insurance contract valid as not contravening public policy); *King v. Housel,* 52 Ohio St.3d 228, 556 N.E.2d 501 (Ohio 1990) (failure of attorney to fully inform client of terms of fee-splitting agreement does not preclude other attorney from enforcing otherwise valid agreement).

The Court appreciates Dragelevich's point that the value of his services should not be measured by hours alone, but that the quality and importance of his services should also be a factor. However, the undisputed facts show that Dragelevich played only an incidental role in the underlying litigation, while Kohn, Milstein expended tremendous resources in taking the case to trial and beyond. Accordingly, the Court concludes that enforcement of an agreement allocating 20% of Kohn, Milstein's fees to Dragelevich is barred by DR 2-107(A), and that summary judgment must be granted in favor of the defendants. However, this decision does not preclude Dragelevich from seeking fair and just compensation for his efforts in an action based on *quantum merit.*

**9.** Dragelevich points out that the Ohio Supreme Court is currently soliciting comments to a proposed revision of DR 2-107. The new rule would provide in part:

(A) Division of fees by lawyers who are not in the same firm may be made only with the prior consent of the client and if:
(1) The division is in proportion to the services performed by each lawyer or, if by written agreement with the client, all lawyers assume responsibility for the representation;
(2) The terms of the division and the identity of all lawyers sharing in the fee are disclosed in writing to the client; and
(3) The total fee is reasonable.
This proposal is evidently based on American Bar Association Model Rule of Professional

III.

The Court grants the defendants' motion for summary judgment and denies the plaintiff's motion for summary judgment. The case is accordingly dismissed.

IT IS SO ORDERED.

Conduct 1.5(e) (1983). Aside from the fact that Dragelevich points to no authority indicating that this Court could use a proposed revision to discern the proper interpretation of the current rule, the proposed revision does not aid Dragelevich's argument. Although the revision suggests that nonproportional fee-splitting arrangements might be permitted under proposed DR 2-107(A)(1), such an arrangement would require the written agreement *of the client,* a factor which is not present in this case. *See generally Berl,* 540 A.2d 410 (discussing Delaware rule similar to Model Rule 1.5(e)). In addition, the proposal also seeks to add a new subsection, proposed DR 2-107(B), which would mandate that all disputes under the rule be submitted to arbitration or mediation.