BLOOMINGTON UROLOGICAL ASSOCIATES, SC, Plaintiff-Appellee, v. BENNETT SCAGLIA, Defendant-Appellant.

Fourth District No. 4—96—1018

Argued July 22, 1997.—Opinion filed October 21, 1997.

794

McCULLOUGH, J., dissenting.

James P. Ginzkey (argued), of Hayes, Hammer, Miles, Cox & Ginzkey, of Bloomington, for appellant.

Michael R. Lied (argued) and SueAnn S. Billimack, both of Husch & Eppenberger, of Peoria, for appellee.

Saul J. Morse and Robert John Kane, both of Illinois State Medical Society, of Springfield, for *amicus curiae*.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In September 1996, the trial court entered an agreed order between defendant, Bennett Scaglia, M.D., and plaintiff, Bloomington Urological Associates, SC (Bloomington Urological), respecting a covenant not to compete. In December 1996, the court found Scaglia in indirect civil contempt for violating the agreed order. Scaglia appeals, arguing that (1) the court's finding of contempt was against the manifest weight of the evidence; and (2) the court improperly altered the terms of the agreed order after finding him in contempt. Because we agree with Scaglia's first argument, we reverse.

## I. BACKGROUND

In May 1994, Scaglia and Peoria Urological Associates, SC (Peoria Urological), entered into an employment agreement, and in June 1996, Peoria Urological assigned the agreement to Bloomington Urological. Section 5.2(d) of the employment agreement provided that upon termination of his employment, Scaglia would not "engage in the [b]usiness" from any office located within a 50-mile radius of any Bloomington Urological office for a 12-month period. Section I.A. of the employment agreement defined "the '[b]usiness' " as "the provision of medical services."

Scaglia subsequently resigned from Bloomington Urological, and in August 1996, Bloomington Urological filed a complaint for declaratory judgment and motions for injunctive relief and a temporary restraining order (TRO) arising from Bloomington Urological's claim that Scaglia was violating the covenant not to compete. The trial court entered a TRO, and in August 1996, the court denied Scaglia's motion to dissolve it. On September 6, 1996 (prior to the hearing on Bloomington Urological's request for injunctive relief), the parties reached an agreement, and the court entered an agreed order. The agreed order provided, in relevant part, that Scaglia "shall not be involved in the business of providing urological medicine services within a 50-mile radius of Bloomington, Illinois, from this date until June 30, 1997." The agreed order also dismissed the underlying complaint without prejudice to the right of either party to pursue a cause of action arising from breach of the employment contract or violation of the agreed order.

In October 1996, Bloomington Urological filed a motion for an order to show cause why Scaglia should not be found in violation of the agreed order, together with a motion that the trial court reinstate the underlying cause dismissed pursuant to the agreed order. At the October and December 1996 hearings on the motion, the evidence

showed the following. Scaglia testified that his medical office is located in a time-share office in Ottawa, Illinois, and is staffed Monday and Tuesday mornings, and all day on Thursday. On Wednesdays and Fridays, at least one nurse works out of Scaglia's home in Bloomington, Illinois. While working at his home, Scaglia's nurses (1) organize and prepare patients' charts, (2) check on patients' status and laboratory work, (3) "check on scheduling of patients for surgical procedures," (4) perform other clerical work, such as typing letters, and (5) sometimes call in prescriptions after consulting with him.

Scaglia's home office has two telephone lines and a fax line listed under "Bennett Scaglia, M.D.," and calls to the Ottawa office are automatically forwarded to his home office when the Ottawa office is not staffed. Most of his medical practice-related mail comes to his home office. Scaglia stated that he is rarely at his home office. He occasionally receives phone calls at home from existing patients who have treatment-related questions, and he sometimes calls in prescriptions from his home. Scaglia further stated that he does not have an examination room in his home office, and he has never seen a patient at his home for "hands-on medical care" or any other kind of meeting.

Scaglia's wife, Rose, testified that Scaglia maintained an office in their home "as a central answering service." She also stated that various patient records were transmitted over the home fax line, and the billing for Scaglia's practice is handled from the home office.

Scaglia's nurses testified that while working at his home office, they scheduled surgery and outpatient procedures, handled billing, and talked with current patients about their medications.

At the conclusion of the hearing, the trial court found that Scaglia violated paragraph 1 of the agreed order that provided that he "shall not be involved in the business of providing urological medicine services within a 50-mile radius of Bloomington, Illinois, from this date until June 30, 1997." The court subsequently entered a written order finding Scaglia in indirect civil contempt of court for violating paragraph 1 of the agreed order.

## II. ANALYSIS

Initially, we address this court's entry of a rule to show cause why the appeal should not be dismissed for lack of an appealable order. In his response to the rule to show cause, Scaglia contends that this court has jurisdiction to consider the trial court's order under Supreme Court Rule 307(a)(1), which permits interlocutory appeal from injunctive orders. 166 Ill. 2d R. 307(a)(1). We agree.

■ In determining whether a trial court's order is appealable

under Rule 307, this court must look to the substance, not the form, of the court's order. *Bohn Aluminum & Brass Co. v. Barker*, 55 Ill. 2d 177, 180, 303 N.E.2d 1, 3 (1973); *In re Estate of Ohlman*, 259 Ill. App. 3d 120, 130, 630 N.E.2d 1133, 1141 (1994). An order constitutes an appealable injunction if it requires a person " 'to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights.' " *In re A Minor*, 127 Ill. 2d 247, 261, 537 N.E.2d 292, 298 (1989), quoting *Wangelin v. Goe*, 50 Ill. 459, 463 (1869). Further, in *In re A Minor* (127 Ill. 2d at 261, 537 N.E.2d at 297) the supreme court wrote that there exists "a policy of broadly construing the meaning of the term 'injunction.' "

■ After conducting hearings on the rule to show cause, the trial court found Scaglia in indirect civil contempt for violating the agreed order, ordered that he not be involved in the business of providing urological medicine within the restricted area through June 30, 1997, and ordered that he desist from certain conduct within the restricted area through June 30, 1997—namely, that he (1) "shall keep no files relating to patients within 50 miles of Bloomington, Illinois," (2) "shall have no in person or telephone contact with any patient if Dr. Scaglia is physically within 50 miles of Bloomington, Illinois," (3) "shall maintain no medical practice and shall employ no staff within 50 miles of Bloomington, Illinois," and (4) "shall not have an office in Bloomington, Illinois[,] and shall have no office telephone, fax or address within 50 miles of Bloomington, Illinois." The court's order here required Scaglia to refrain from doing several "particular" things, and it operated as a restraint on his right to provide urological medical services to his existing patients. Thus, we conclude that the court's order is appealable under Rule 307(a)(1). We further conclude that Bloomington Urological's filing (after Scaglia filed his notice of appeal) of a postjudgment motion seeking modification of the court's order did not render the court's order nonappealable until such time as the motion was resolved. In *Trophytime, Inc. v. Graham*, 73 Ill. App. 3d 335, 335-36, 391 N.E.2d 1074, 1074-75 (1979), this court held that no motion attacking an interlocutory order appealable under Rule 307 serves to extend the time for taking an appeal. Although the situation here is somewhat different from that in *Trophytime* (where the party who filed the postjudgment motion also filed the notice of appeal), we nonetheless hold that Bloomington Urological's filing of a postjudgment motion does not serve to postpone Scaglia's time for taking an appeal.

## A. The Trial Court's Finding of Contempt

Scaglia argues that the trial court erred by finding him in indirect civil contempt because the agreed order upon which the contempt finding was based was ambiguous and did not clearly set forth what acts were prohibited. In response, Bloomington Urological argues that paragraph 1 of the agreed order is unambiguous and prohibits Scaglia from being "involved in the business of providing urological medicine services," as opposed to being involved in the " 'practice' of urologic medicine." We agree with Scaglia that the language of paragraph 1 of the agreed order is ambiguous in its scope.

■ An agreed order is considered a contract between the parties to the litigation. Thus, its construction is governed by principles of contract law. *Elliot v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724, 728-29, 589 N.E.2d 1074, 1077 (1992). As with any other contract, "[w]hether a restrictive covenant is ambiguous is a question of law." *Fick v. Weedon*, 244 Ill. App. 3d 413, 416, 613 N.E.2d 362, 364 (1993). Thus, we interpret the agreed order at issue here *de novo*. See *Stojkovich v. Monadnock Building*, 281 Ill. App. 3d 733, 742, 666 N.E.2d 704, 711 (1996) (when an issue is decided as a matter of law, review of a trial court's decision on the matter is generally *de novo*).

The primary consideration in interpreting an agreed order is to effectuate the parties' intent. *Elliot*, 226 Ill. App. 3d at 729, 589 N.E.2d at 1077. In *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 283, 154 N.E.2d 683, 689 (1958), the supreme court wrote as follows:

> "In general, the intention of the parties is to be determined from the final agreement executed by them, rather than from preliminary negotiations and agreements, [citation] but previous agreements, negotiations and circumstances may be considered in determining the meaning of specific words and clauses."

Accordingly, an agreed order must be interpreted in its entirety, considering all facts and circumstances surrounding its execution, as well as pleadings and motions from which it emanates. *Elliot*, 226 Ill. App. 3d at 729, 589 N.E.2d at 1077. Further, where—as here—an agreed order emanates from a restrictive covenant, the court must strictly construe it and resolve any doubts or ambiguities in favor of natural rights and against restriction. *Lempka v. Finkel*, 278 Ill. App. 3d 417, 427-28, 663 N.E.2d 158, 166 (1996).

■ Here, section 5.2(d) of the employment agreement provided that, upon termination of his employment, Scaglia would not "engage in the [b]usiness" from any office located within a 50-mile radius of any Bloomington Urological office for a 12-month period. Section I.A. of the employment agreement defined "the '[b]usiness' " as "the pro-

vision of medical services." Thus, the employment agreement—from which the agreed order flowed—provided that Scaglia would not engage in the provision of medical services. Count II of Bloomington Urological's complaint (breach of contract) alleged that Scaglia was "engaged in the business within a 50-mile radius" of a Bloomington Urological office. At the hearing on Bloomington Urological's motion for a TRO, Scaglia's attorney referred to Scaglia's being "enjoined from practicing medicine." In addition, at the October 1996 hearing, Bloomington Urological discussed what "the parties thought it meant not to be in the business of providing urological medicine" and suggested that it involved "treating" patients. Further, the language of paragraph 1 of the agreed order is clearly capable of being understood in more than one sense.

Thus, strictly construing the agreed order, resolving any ambiguities against restriction, and considering the circumstances surrounding its execution—as well as the employment agreement and complaint from which it emanated—we conclude that paragraph 1 of the agreed order prohibited Scaglia from being involved in the *practice of medicine.*

We agree with Scaglia that the practice of medicine does not include administrative or managerial aspects of a medical practice, such as billing, scheduling, and updating patients' charts. See 225 ILCS 60/49 (West 1994) (statute relating to the unauthorized practice of medicine describes the "practice of medicine" as the diagnosis and treatment of ailments or conditions); see also *Women's Medical Center v. Finley,* 192 N.J. Super. 44, 57, 469 A.2d 65, 73 (1983) (business, administrative, and management tasks—whether performed in-house or outsourced—have "no fundamental impact on the 'modality' of delivery of health care services"); *Practice Management Associates, Inc. v. Orman,* 614 So. 2d 1135, 1138 (Fla. Dist. Ct. App. 1993) (under Illinois law, a physician may split fees with a nonprofessional who provides marketing services).

Further, although we do not decide precisely what "the practice of medicine" means in the context of a restrictive covenant, we conclude that, in this context, it *cannot* include telephone inquiries from existing patients to a physician (or his employees acting as conduits of information) or responses to those patients—either in the form of recommending treatment or prescribing medication. In the age of modern technology—where telephones and beepers travel with an individual and telephone calls can be automatically forwarded to another line—it simply makes no sense to place significance upon where a physician happens to take phone calls.

In addition, physicians have both a legal and ethical obligation to

attend to their patients' needs. Physicians licensed in Illinois are specifically prohibited from abandoning their patients. See 225 ILCS 60/22(A)(16) (West 1994). Further, the American Medical Association's Council on Ethical and Judicial Affairs mandates that "once having undertaken a case, the physician should not neglect the patient." American Medical Association Code of Medical Ethics: Current Opinions with Annotations, 8.11 (1996). To conclude that telephone inquiries from existing patients to their physician constitute the practice of medicine in the context of a restrictive covenant would effectively force a physician to neglect or abandon his patients whenever they telephone or page him with medical-related questions, concerns, or emergencies at a time when he happens to be in the restricted geographical area.

So construed, we conclude that Scaglia did not violate the agreed order. That order permitted him to examine, diagnose, and treat patients in his Ottawa office, and it is undisputed that he never personally examined a patient in his home office. Nor did the evidence show that he or his nurses ever solicited patients from his home office. Scaglia's response—and his nurses' responses—to telephone calls from patients he had already personally seen and treated in Ottawa is a necessary concomitant to his treatment of those patients.

Thus, under the circumstances of this case, the trial court erred by finding Scaglia in indirect civil contempt. See *In re Marriage of Herkert*, 245 Ill. App. 3d 1068, 1073, 615 N.E.2d 833, 836-37 (1993) (a trial court's finding of contempt will not be reversed unless it is against the manifest weight of the evidence).

Because we so conclude, we need not address Scaglia's argument that the trial court erred by altering the terms of the agreed order.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

COOK, J., concurs.

JUSTICE McCULLOUGH, dissenting:

Because I disagree with the majority's conclusion that the agreed order is ambiguous in the scope of the acts prohibited, I respectfully dissent.

Illinois public policy strongly favors freedom of contract, and courts will not declare a contract violative of public policy unless it

expressly contravenes the law or a known public policy of this state. *Schniederjon v. Krupa*, 130 Ill. App. 3d 656, 659, 474 N.E.2d 805, 808 (1985). In upholding the validity of a restriction by contract upon the right to practice medicine, the supreme court in *Canfield v. Spear*, 44 Ill. 2d 49, 52, 254 N.E.2d 433, 435 (1969), found that no legitimate public interest is adversely affected by such contract, inasmuch as the doctor could practice elsewhere and other doctors would move their practices to the area to alleviate any shortage. The parties here were free to draft any provisions they liked for purposes of resolving their dispute by means of the agreed order. Had they wished merely to prohibit Scaglia from the "practice of medicine," a concept the majority itself declines to define, they might readily have done so. Instead, the agreed order prohibited Scaglia from being "involved in the business of providing urological medicine services," a limitation necessarily broader than the "practice of medicine."

The trial court found the following violations proved beyond a reasonable doubt:

(1) "[Scaglia] is listed in the phone book, the Bloomington phone book, as Urologic Surgery Associates."

(2) Scaglia is also personally separately listed in the same book as "Dr. Bennett Scaglia."

(3) He employs two registered nurses who work out of his home.

(4) Scaglia's wife, when she changed address with the Bloomington Post Office, "indicated it was a business, Urologic Surgery Associates, moved from 1505 Eastland Drive, Bloomington, to 3206 Viney Lane, Bloomington."

(5) Scheduling of work was performed at the office. Nurse Nydegger indicated she did reception work for Scaglia 50% in Bloomington and 50% in Ottawa.

(6) Patient files are kept in Bloomington. Prescription forms are mailed from the Bloomington office.

Provisions of the Medical Practice Act of 1987 relating to the unauthorized practice of medicine describe the practice of medicine as the "diagnosis or treatment of physical or mental ailments" (225 ILCS 60/49(i) (West 1994)), and also include conduct of a person who "attaches the title Doctor, Physician, Surgeon, [or] M.D. *** to his or her name indicating that he or she is engaged in the treatment of human ailments or conditions as a business." 225 ILCS 60/49(v) (West 1994). The trial judge could reasonably find that defendant's maintenance of a telephone listing in his professional capacity constituted providing urological medicine services and, therefore, the provision of medical services within the restricted area. Patient charts and files are necessarily integral to the diagnosis and treatment of patients, and the maintenance of files in the Bloomington home office

could also reasonably be found to constitute the "business of providing urological medicine services." Similarly, defendant employs two nurses in the Bloomington home office who operate under his direction and control and act as a conduit for defendant's prescription of medication and other medical treatment. Defendant personally provided medical advice and prescribed treatment from the Bloomington home office in response to patient calls to that location. Applying the manifest weight standard, it is clear defendant violated the agreed order.

The parties bargained for the restriction of "being involved in the business of providing urological medicine services." That Scaglia would pay that agreement only cursory heed, by limiting his physical contact with patients to the Ottawa office, evidences his disdain for the broader reach of the agreement he voluntarily entered into. The majority's constriction of the agreed order to the prohibition of face-to-face, physician-patient contact, is not supported by the language the parties chose in framing their consensus.

Curiously, the majority does not contend a restriction on the practice of medicine, a course of conduct it agrees involves the diagnosis and treatment of physical ailment, is against public policy—but it becomes so when there is a restriction on doctor-patient telephonic contact for that same purpose.

The trial court's finding of contempt for violation of the agreed order was not against the manifest weight of the evidence. I dissent.