*In re* MARRIAGE OF CAROL J. ZIEMANN, Petitioner, and DOUGLAS S. ZIEMANN, Respondent (William T. Regas, Appellant; Carol J. Ziemann, n/k/a Carol J. Smith, Appellee).—CAROL J. SMITH, f/k/a Carol J. Ziemann, Appellant, v. WILLIAM T. REGAS, Appellee.

First District (3rd Division)   Nos. 1—89—2886, 1—89—3433 cons.

Opinion filed June 5, 1991.

Law Offices of William T. Regas, of Park Ridge (William T. Regas and Mark B. Friedman, of counsel), for William T. Regas.

Anthony J. Pauletto, of Skokie, for Carol J. Ziemann.

JUSTICE WHITE delivered the opinion of the court:

These consolidated appeals involve a client-attorney dispute over attorney fees in connection with a marriage dissolution proceeding heard in the circuit court of Cook County.

The attorney, William T. Regas, appeals from dismissal of his petition for a fee award against the client, Carol J. Ziemann, now known as Carol J. Smith. Smith appeals from dismissal of her petition for an award against Regas of fees for defending against his fee appeal.

For the reasons that follow, we reverse and remand on Regas' appeal and affirm on Smith's appeal.

## FACTS

Smith signed a fee agreement with Regas, who replaced her earlier attorney. Regas told Smith that Leslie Poole, another lawyer whom Regas called his "associate," would be primarily responsible for her case. Poole was not a formal member of a law firm with Regas but shared an office suite, equipment, and staff with Regas. Smith ac-

cepted Poole's services, praised them, subsequently promised to pay Regas, and did pay him nearly $3,000 on account. She also initially expressed satisfaction with the outcome of the dissolution proceedings handled by Regas' office. However, she failed to pay the balance of his bill and retained other counsel for post-judgment proceedings.

Regas filed a fee petition under section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 508(a)). The petition sought an award of $12,070, representing the unpaid balance of a total fee bill of $14,870. The fee petition was dismissed on Smith's motion because of Regas' alleged violation of Rule 2—107 of the Code of Professional Responsibility (107 Ill. 2d R. 2—107) through participation in an allegedly undisclosed and unconsented-to arrangement for division of fees with lawyers who were not partners in or associates of his firm. The lawyers in question were Poole and Michael Ek, another lawyer who shared the office suite with Regas.

REGAS' APPEAL, No. 1—89—2886

Regas raises issues pertaining to trial-court procedure, standing, law office organization, and fee arrangements. Because we decide in his favor on the issue of fee arrangements, we need not address his other contentions.

Regas contends that he paid the lawyers whom he engaged a flat hourly rate and that their pay depended on how many hours they worked, not on whether he received payment from the client. Accordingly, he says, regardless of whether they were his "associates" in terms of Rule 2—107, his payments to them did not constitute a division of fees, and thus, he did not violate Rule 2—107.

Regas cites ABA Committee on Ethics and Professional Responsibility, Formal Opinion 88—356 (1988), on temporarily hired lawyers. The passage that he cites reads as follows:

> "Assuming that a law firm simply pays the temporary lawyer reasonable compensation for the services performed for the firm and does not charge the payments thereafter to the client as a disbursement, the firm has no obligation to reveal to the client the compensation arrangement with the temporary lawyer. Rule 1.5(e), relating to division of a fee between lawyers, does not apply in this instance because the gross fee the client pays the firm is not shared with the temporary lawyer. The payments to the temporary lawyer are like compensation paid to nonlawyer employees for services and could also include a

percentage of firm net profits without violation of the Rules or the predecessor Code. *See* ABA Informal Opinion 1440 (1979).

If, however, the arrangement between the firm and the temporary lawyer involves a direct division of the actual fee paid by the client, such as percentage division of a contingent fee, then Rule 1.5(e)(1) requires the consent of the client and satisfaction of the other requirements of the Rule regardless of the extent of the supervision.

The requirement of Rule 1.5(a) that the total fee be reasonable is, of course, a restriction only on the fee charged to the client and not on how much is paid to the temporary lawyer. That requirement must be satisfied in all events.''

Though the cited ethics opinion pertained to lawyers hired temporarily by a firm, rather than lawyers working more or less permanently as independent contractors with another lawyer as in the present cause, Regas persuasively contends that the enunciated fee-division principles apply here as well.

Regas argues that his fee arrangement with Poole and Ek did not constitute a division of fees such as has been addressed in numerous cited cases (*e.g., O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 537 N.E.2d 730; *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Schniederjon v. Krupa* (1987), 162 Ill. App. 3d 192, 514 N.E.2d 1200; *Hofreiter v. Leigh* (1984), 124 Ill. App. 3d 1052, 465 N.E.2d 110), but rather that it constituted a flat compensation arrangement with Poole and Ek not dependent on Regas' receipt of payment from Smith.

Smith cites *Phillips v. Joyce* (1988), 169 Ill. App. 3d 520, 523 N.E.2d 933, as support for invalidating Regas' fee arrangement under Rule 2—107. *Phillips* was a dispute between two wholly unrelated law firms that had collaborated with each other in representing class plaintiffs. One of the firms attempted to disavow its own fee contract with the other by terming it illegal under Rule 2—107, because the disavowing firm had failed to disclose the fee contract's details to the clients. Yet the arrangement between the two firms had been disclosed in general terms to most of the class representatives, who had then agreed to it.

The *Phillips* court wrote:

"Apparently, [the disavowing firm] advocates the disclosure of every facet of the division of work and fees before a fee-sharing contract could be upheld under DR 2—107.

We believe, however, that a standard of substantial compliance is preferable because it comports with practical realities.

In fact, such a standard is consonant with the Illinois Supreme Court's opinion in *Kravis v. Smith Marine, Inc.* [(1975), 60 Ill. 2d 141, 324 N.E.2d 417,] and other cases that have considered the scope of the disclosure requirement. One court, faced with a similar question involving the disclosure of a fee-sharing agreement to a client, found that the client presumably knew of the arrangement, if not the details, stating, 'This method of dealing admittedly may not strictly comport with the guidelines of section DR 2—107 of the Code of Professional Responsibility, but it certainly does not fall far from this section's ethical parameters.' *Carter v. Katz, Shandell, Katz and Erasmous* (1983), 465 N.Y.S.2d 991, 997, 120 Misc. 2d 1009, 1015 (construing ABA version of the disciplinary rule)." *Phillips*, 169 Ill. App. 3d at 530-31, 523 N.E.2d at 939.

Discussing in *dicta* the related question of what disclosure to the unnamed class members was required or feasible, the *Phillips* court referred to the possibility that the court trying the class action might have "treated Phillips as a member of Joyce's law firm for purposes of the fee allocation." *Phillips*, 169 Ill. App. 3d at 534, 523 N.E.2d at 942.

■ Thus, not only does *Phillips* fail to give any substantial support to Smith's arguments on disclosure of fee division, but it also tends to support Regas' additional argument that, for purposes of Rule 2—107, he, Poole, and Ek can be considered as members of the same law firm.

We believe that the trial court erred in concluding that Rule 2—107's reference to a division of fees was intended to reach a flat hourly compensation arrangement such as Regas had with Poole and Ek, particularly since the client (Smith) was well aware that Regas' office associate (Poole) rather than Regas himself would be doing the bulk of the work in her marriage dissolution proceeding.

■ Smith also raises an unconscionability argument against Regas' fee petition because it is based solely on independent contractors' services. According to Smith, Regas would receive fees ($75 per hour) highly disproportionate to those he paid to the allegedly underpaid contractors, who received $10 or $14 per hour plus free office space, free equipment use, and free staff support. Smith contends that Regas thus would have no incentive to monitor the hours logged by the contractors, thereby becoming merely a broker rather than a lawyer.

Regas correctly replies that this contention was not raised in the trial court and was thus waived. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879.

■ He also replies that Smith agreed that her case would be handled by Regas' office associate; she does not argue that the agreed hourly rate of $75 for office time and $85 for court time was unreasonable; Regas made no charge for his own estimated 12 to 15 hours of personal time; and he reduced the hourly rate to a flat $75. In addition, he says that the record contains no evidence that he failed to properly monitor the independent contractors, and he testified that he told Smith that all the work would be done under his supervision.

Regardless of Regas' plausible response to Smith's unconscionability argument here, it should be recalled that Regas' fee petition was brought under section 508(a) of the Act, not as a separate contractual action at law. A court considering a section 508(a) fee petition is to weigh the reasonableness of the fee sought, even if it is sought pursuant to a definite contract. (*In re Marriage of Gorsich* (1991), 208 Ill. App. 3d 852, 856-57, 567 N.E.2d 601, 604; *In re Marriage of Pitulla* (1986), 141 Ill. App. 3d 956, 961-62, 491 N.E.2d 90, 93-94; see generally Ill. Ann. Stat., ch. 40, par. 508, Supp. to Historical & Practice Notes, at 167-68 (Smith-Hurd Supp. 1990).) Therefore, although Regas' fee arrangement satisfied Rule 2—107 because his fee arrangement with Poole and Ek did not constitute a "division" of fees, on remand his fee petition will still have to pass a reasonableness test in light of all the circumstances.

### SMITH'S APPEAL, No. 1—89—3433

Smith contends that the trial court erred in dismissing her petition for an award against Regas of fees in connection with defending against Regas' appeal. Smith contends that a section 508(a) fee award may be made not only against a spouse but also against an attorney who appeals from a judgment on the attorney's own fee petition.

At the time of Smith's petition, section 508(a) read in pertinent part as follows:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order *either spouse* to pay a reasonable amount for *his own* costs and attorney's fees *and for* the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred by *the other spouse* \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 40, par. 508(a).)

More recently, the General Assembly has amended the section to substitute the term "any party" for each of the terms "either spouse"

and "the other spouse." Pub. Act 86—1452, §1, §508(a), eff. July 1, 1991 (amending Ill. Rev. Stat. 1989, ch. 40, par. 508(a)).

Besides generally arguing for an expansive reading of section 508(a)'s then-existing language, Smith asserts that by passing a bill in 1989 that would have made "any party" liable to a section 508(a) fee award, the legislature expressed its intent for purposes of construing the section. The 1989 bill was vetoed, and the legislature did not override the veto. See 86th Ill. Gen. Assem., Senate Bill 134, 1989 Sess.; 86th Ill. Gen. Assem., 1 Final Legislative Synopsis & Digest (No. 17), 1989 Sess., at 87-88 (1990).

■■ A legislative amendment, even when successfully enacted, ordinarily indicates only an intent to change, not clarify, a statute, particularly where the statute was not previously ambiguous. (Bonfield v. Jordan (1990), 202 Ill. App. 3d 638, 645, 560 N.E.2d 412, 417.) Section 508(a), as it read at all times pertinent hereto, was not ambiguous in limiting to spouses the parties against whom fee awards could be made. Therefore, neither the vetoed 1989 bill nor the Act's subsequent amendment by Public Act 86—1452 can be taken as indicating a prior legislative intent to expand fee-award liability.

The court's authority to order attorney fees under section 508(a) is strictly limited to what is statutorily permissible. Thus, an award under the version of section 508(a) applicable here was not permitted unless the party seeking the award was the legally married "spouse" of the other, despite the fact that certain types of proceedings by legally unmarried individuals are authorized by the Act. (In re Mac Harg (1983), 120 Ill. App. 3d 753, 755, 458 N.E.2d 1154, 1156.) If a cohabitant who is not legally married to a party cannot be considered the party's "spouse" in terms of section 508(a), a fortiori a party's attorney cannot be considered the party's "spouse." The trial court did not err in dismissing Smith's fee petition.

Accordingly, the judgment in cause No. 1—89—2886 is reversed, and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion. The judgment in cause No. 1—89—3433 is affirmed.

No. 1—89—2886, Reversed and remanded.
No. 1—89—3433, Affirmed.

RIZZI and GREIMAN, JJ., concur.