2025 IL App (1st) 242311

No. 1-24-2311

Opinion filed October 28, 2025

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ATLAS ASSET MANAGEMENT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23M1714863 |
| | ) | |
| ALVIN KANG, | ) | Honorable |
| | ) | Regina Ann Mescall, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Alvin Kang appeals from the circuit court's orders (1) finding him in breach of an agreed order with his former landlord, plaintiff Atlas Asset Management (Atlas), (2) requiring him to pay Atlas $75,000 in liquidated damages for the breach, and (3) denying his motion to reconsider. On appeal, Kang argues that the circuit court erred by finding him in breach of the agreed order and entering judgment against him without holding an evidentiary hearing despite his request for such a hearing in his motion to reconsider. For the following reasons, we reverse the

circuit court's orders, vacate the judgment against Kang, and remand for further proceedings consistent with this order.

¶ 2                                   I. BACKGROUND

¶ 3     The record on appeal does not contain any reports of proceedings. We take the following facts from the common-law record.

¶ 4                      A. Eviction Proceedings and Agreed Order

¶ 5     Kang leased an apartment in a building owned by Atlas. On September 29, 2023, Atlas filed an eviction action against Kang alleging that he failed to pay $38,000 in rent. On December 12, 2023, the circuit court entered default judgment in favor of Atlas, awarded Atlas possession of the apartment, and ordered Kang to vacate by December 19, 2023. On January 11, 2024, Kang filed a motion to vacate the default judgment pursuant to section 2-1301(e) of the Code of Civil Procedure (735 ILCS 5/2-1301(e) (West 2024)). The circuit court granted Kang's motion to vacate on January 19, 2024.

¶ 6     On March 11, 2024, Kang filed an affirmative defense of breach of implied warranty of habitability and counterclaimed, seeking damages and attorney fees. On March 29, 2024, Atlas responded to Kang's affirmative defense and filed a section 2-615 motion to dismiss Kang's counterclaims. See *id.* § 2-615. The circuit court set Atlas's motion to dismiss for a hearing on May 10, 2024.

¶ 7     However, the parties settled their dispute. On May 14, 2023, the circuit court entered the following agreed order:

        "1. Defendant must wire $30,000.00 USD to Plaintiff by 5/13/2024.

2. Defendant must vacate the Premises, clean and remove all personal items from the Premises/storage/garage, turnover keys and tender possession by 6/15/2024 OR wire an additional $9,500.00 for each month prior to the fifteenth day of the corresponding month. For the avoidance of doubt, if the Defendant were to wire $9,500.00 by 6/14/2024 (in addition to Paragraph 1) then they would be permitted to occupy Premises through 7/14/2024.

3. COMPLIANCE. If Defendant complies with Paragraphs 1 and 2 above then on the compliance status date, Plaintiff will dismiss this action with prejudice (if Defendant vacated) or continue compliance status date as appropriate.

4. FAILURE TO COMPLY. If Defendant does not comply with Paragraphs 1 and 2 above, then upon motion or at the Compliance Status date, Plaintiff is entitled to an immediate Order for Possession, with enforcement *instanter*, a judgment for $75,000.00 USD and the file shall be unsealed."

The court set a hearing on Kang's compliance with the agreed order for June 20, 2024, and later reset the compliance hearing to August 16, 2024.

¶ 8    The court's August 16, 2024, written order states that both parties' attorneys appeared at the compliance hearing. The court found that Kang failed to comply with the agreed order, although the order does not explain how or why. The court awarded possession of the apartment to Atlas and entered a $75,000 judgment against Kang.

¶ 9                                    B. Motion to Reconsider

¶ 10    On August 30, 2024, Kang filed a motion to reconsider. Kang argued that he complied with the agreed order because he paid Atlas $30,000 and "twice elected to stay by timely paying [rent] in June and July of 2024."

¶ 11    Kang's motion to reconsider also provided an account of the August 16, 2024, compliance hearing. According to the motion, at the compliance hearing, Kang's attorney informed the court that Kang had moved out of the apartment. Atlas's attorney claimed that Kang had not moved out or returned his keys. Kang's attorney acknowledged that Kang had not returned the keys but explained that Kang "was unable to turn in the keys because [Atlas] did not have an office in the building where [Kang] had lived." Kang's attorney stated that Kang would give the keys to Atlas's attorney and requested that the court continue the compliance hearing to August 19, 2024, to confirm Kang's turnover of the keys. The court refused, "citing the Democratic National Convention scheduled for the week of August 19, 2024." Kang's motion argued that, "without conducting an evidentiary hearing vis-à-vis [Kang's] counsel's representations, the Court found [Kang] in non-compliance and entered an order for possession and [a] money judgment in the sum of $75,000."

¶ 12    In his motion to reconsider, Kang argued that the agreed order was a contract with Atlas and that he complied with the terms of that contract. Kang asserted the defense of impossibility to Atlas's complaint that he did not timely return the apartment keys. He contended that it was impossible for him to return the keys because Atlas "was non-responsive to [Kang's] communications and there was no office to drop the keys off with."

¶ 13    Kang also argued that he was entitled to an evidentiary hearing to prove his compliance with the agreed order and the impossibility of returning the keys to Atlas on his move-out date. Kang attached as exhibits the evidence he would have presented at an evidentiary hearing. Specifically, he attached an invoice from his moving company dated August 14, 2024, which showed that he timely moved out of the apartment. Kang also attached the affidavit of Malkie Oshana, whom Kang hired to clean the apartment, and photographs Oshana took of the empty apartment on August 15, 2024. In addition, Kang attached a lease for his new apartment on Lake Street, which began on August 14, 2024. Finally, Kang attached his own affidavit attesting that he moved out of the Atlas apartment on August 14, 2024, and initially left the keys in the unlocked apartment. He also attested that, out of concern for a break-in, he returned on August 15, 2024, locked the apartment, and took the keys with him. He then delivered the keys to Atlas's attorney on August 16, 2024.

¶ 14    In response, Atlas acknowledged that, under the agreed order, Kang's lease ended on August 14, 2024. Atlas argued that Kang was required to "tender possession" by August 15, 2024, but he tendered possession one day late, on August 16, 2024.

¶ 15    Kang's reply argued that, because the parties' attorneys "disputed the facts when in court on August 16, 2024," the circuit court should have held an evidentiary hearing to resolve whether returning the keys to Atlas's attorney on August 16, 2024, violated the agreed order. Kang argued that the agreed order did not specify how he had to return the keys and "[a]mbiguity as to how [he] was to turn over the keys made compliance impossible." Kang again explained that Atlas "ha[d] no designated office or designated agent to receive the keys." Therefore, Kang "initially left the keys on the emptied premises but, upon reflecting that the premises may be broken into, decided

it was best to turn [the keys] over to [Atlas's] counsel. Mariana, [Kang's] only contact with [Atlas], was unresponsive to [his] attempts to contact her." As a result, Kang "could not directly relinquish the keys to [Atlas]."

¶ 16    On October 24, 2024, the circuit court denied Kang's motion to reconsider. The court's written order does not explain its reasoning for denying Kang's motion.

¶ 17    Kang timely appealed.

¶ 18                                II. ANALYSIS

¶ 19    Atlas has not filed a brief in this appeal, and we have taken the case on the record and Kang's brief only. The record is simple, and we can decide Kang's claims of error without the aid of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 20    On appeal, Kang argues that (1) the agreed order did not require him to return the keys, (2) even if he retained the keys, doing so did not equate to retaining possession of the apartment, (3) the circuit court failed to find that he breached paragraph 1 of the agreed order, (4) any noncompliance with the agreed order should be excused, (5) the agreed order's liquidated damages clause is unenforceable, and (6) he was entitled to an evidentiary hearing.

¶ 21                                A. Forfeiture

¶ 22    All the contract law arguments Kang raises on appeal, designated arguments 1 through 5 in the preceding paragraph, are new. Kang did not raise them in the circuit court. An appellant forfeits arguments he raises for the first time on appeal. *Taylor v. Brooklyn Boulders, LLC*, 2025 IL App (1st) 231912, ¶ 57 (citing *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996)). Therefore, Kang has forfeited all his contract law-based arguments for purposes of this appeal.

¶ 23    The only argument that Kang raised in both his motion to reconsider and in this appeal is that the circuit court erred by finding him in breach of the agreed order and entering a $75,000 judgment against him without holding an evidentiary hearing. This is the only argument we will consider.

¶ 24                                 B. Evidentiary Hearing

¶ 25    Kang argues that he was entitled to an evidentiary hearing. He contends that the circuit court erred by finding him in noncompliance with the agreed order and entering a $75,000 judgment against him without holding an evidentiary hearing.

¶ 26    There is no indication that the circuit court heard evidence at the compliance hearing on August 16, 2024. If it had, Kang would not have filed a motion to reconsider requesting an evidentiary hearing. Furthermore, Atlas has never claimed that the circuit court *did* in fact hold an evidentiary hearing regarding Kang's compliance with the agreed order. Because there is no dispute that the circuit court did not hold an evidentiary hearing, we review the circuit court's orders *de novo*. See *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007).

¶ 27    This dispute involves a contract between the parties: the May 14, 2024, agreed order. "[A]n agreed order is considered to be a contract between the parties." *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 27 (citing *Elliott v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724, 728-29 (1992)). "[A]n agreed order must be interpreted in its entirety, considering all facts and circumstances surrounding its execution." *Bloomington Urological Associates, SC v. Scaglia*, 292 Ill. App. 3d 793, 798 (1997).

¶ 28    When the parties appeared before the circuit court on August 16, 2024, the court had to decide whether Kang complied with or breached the agreed order of May 14, 2024, that is, whether

he performed or breached the contract. See *Draper*, 2014 IL App (1st) 132073, ¶ 27. As Kang's motion to reconsider reflects, the parties disputed that issue. Atlas argued that Kang breached the agreed order because he did not return the keys on the day his month-to-month lease ended: August 14, 2024. By contrast, Kang maintained that he complied with the agreed order. He paid Atlas $30,000, paid rent for two additional months, and moved out on the day his lease ended. Kang also argued that, to the extent returning the keys to Atlas on August 14, 2024, was a term of the agreed order, it was impossible for him to comply with that term because Atlas provided no instructions or location for returning the keys and ignored his communications. Kang claimed that he did the best he could with the keys; he left them in the apartment on August 14, 2024, then collected them the following day to prevent a break-in, then gave them to Atlas's attorney on August 16, 2024.

¶ 29   The parties presented at least three disputes of fact to the circuit court: (1) whether Kang materially breached the agreed order, as Atlas contended, (2) whether returning the keys on August 14, 2024, was impossible, as Kang maintained, and (3) whether Kang substantially complied with the agreed order's key return provision, as Kang also maintained. See *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 72 (2006) ("whether or not a material breach of contract has been committed is a question of fact"); *Rosenberger v. United Community Bancshares, Inc.*, 2017 IL App (1st) 161102, ¶¶ 31-34 (factual dispute precluded summary judgment on contractual impossibility of performance); *LB Steel, LLC v. Carlo Steel Corp.*, 2018 IL App (1st) 153501, ¶ 37 ("[w]hether a party to a contract rendered substantial performance is a question of fact" (citing *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.*, 115 Ill. 2d 119, 127 (1986))).

¶ 30   Instead of holding an evidentiary hearing to resolve these issues of fact, the circuit court summarily found that Kang breached the agreed order and entered a $75,000 judgment against

him. At the August 16, 2024, hearing, neither party presented any witnesses, affidavits, or other evidence regarding compliance with the agreed order. It appears that the court ruled based solely on the attorneys' oral arguments. Therefore, the court decided a breach of contract claim and awarded $75,000 in liquidated damages based on no evidence. That was error for two reasons.

¶ 31     First, Atlas was the plaintiff in this eviction action and the breach of contract "action" it brought before the circuit court at the August 16, 2024, compliance hearing. In an eviction action, the plaintiff must prove its right to possession of the property by a preponderance of the evidence. *Circle Management, LLC v. Olivier*, 378 Ill. App. 3d 601, 609 (2007). Due process requires that the plaintiff present evidence establishing its right to possession. *Eckel v. MacNeal*, 256 Ill. App. 3d 292, 296-97 (1993). Similarly, the plaintiff in a breach of contract case must prove by a preponderance of the evidence that the defendant breached the contract. *Lidecker v. Kendall College*, 194 Ill. App. 3d 309, 317 (1990). The circuit court's ruling in Atlas's favor at the August 16, 2024, compliance hearing cannot have been based on any evidence because Atlas submitted no evidence. Atlas does not contend otherwise. Therefore, Atlas was not held to its burden of proof, and Kang's right to due process was violated.

¶ 32     Second, after the court found Kang to be in breach of the agreed order and entered a $75,000 judgment against him, Kang requested the opportunity to present evidence showing that he fully or substantially complied with the agreed order or, alternatively, that Atlas made compliance with the key return provision impossible. Kang provided the circuit court with the evidence he would have presented: photographs and a mover's invoice showing that he vacated the apartment on August 14, 2024, a lease showing that he moved into a different apartment the same day, and his own testimony explaining his efforts to return the keys. Because this evidence

created disputes of fact about whether Kang complied with the agreed order, Kang was entitled to an evidentiary hearing to present it. See *Elliott*, 226 Ill. App. 3d at 732. The circuit court erred in denying Kang the opportunity to present this evidence. See *id.*

¶ 33    While the instant case is a case of first impression, *Elliott* is the most analogous to this case. In *Elliott*, the landlord filed an eviction action against the tenant based on failure to pay rent. *Id.* at 726. The parties settled the case, and the court entered an agreed order terminating the tenancy and requiring the tenant to pay the landlord back rent of $5,552 in three installments. *Id.* at 727. The tenant did not make the payments, so the court awarded the landlord possession and entered a money judgment against the tenant. *Id.* The landlord then brought a separate breach of contract action seeking rent for the tenant's occupancy beyond the agreed termination date. *Id.* The tenant moved to dismiss it, arguing that the agreed order resolved all remaining issues of rent, so the landlord could not seek additional rent under a breach of contract theory. *Id.* The court found the agreed order ambiguous and, after reviewing affidavits from the parties, granted the motion to dismiss, finding that the parties intended for the agreed order to resolve all outstanding issues of rent. *Id.*

¶ 34    The *Elliott* court vacated the judgment, reversed, and remanded. *Id.* at 732. The court explained that, "[b]y finding the language of the [agreed] order ambiguous, the trial court created a question of fact as to the true intent of the parties when the order was entered." *Id.* "Because the [parties'] affidavits contained disputed facts, at the very least, [the landlord] was entitled to an evidentiary hearing to present any evidence which may have been helpful for the court." *Id.* Therefore, the circuit court in that case erred in deciding the landlord's breach of contract claim

- 10 -

based solely on the affidavits and "[t]he conclusional statements by the attorneys concerning the intent of the parties." *Id.*

¶ 35    *Elliott* demonstrates that, although a landlord-tenant dispute regarding an agreed order resolving an eviction case may *appear* to raise only questions of law, it can also raise questions of fact. Such questions of fact can include the parties' intent, as in *Elliott*, or materiality, substantial compliance, and impossibility, as in this case. When a landlord and a tenant put such disputes of fact before the circuit court, the parties may present evidence, and the circuit court must hear that evidence before it can resolve the factual disputes. Like the circuit court in *Elliott*, it was error to resolve factual disputes without any evidence and based solely on "[t]he conclusional statements by the attorneys" at the August 16, 2024, compliance hearing. See *id.*

¶ 36                                      III. CONCLUSION

¶ 37    For the foregoing reasons, we reverse the circuit court's August 16 and October 24, 2024, orders, vacate the judgment against Kang, and remand for further proceedings consistent with this opinion.

¶ 38    Reversed in part and vacated in part; cause remanded.

---

***Atlas Asset Management v. Kang***, **2025 IL App (1st) 242311**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23M1714863; the Hon. Regina Ann Mescall, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Shorge K. Sato, of Shoken Legal P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | No brief filed for appellee. |

---